Anna F. POWELL

v.

**Elliot RICHARDSON, Secretary of Health, Education and Welfare.**

Civ. A. No. 71-2861.

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1973.

Bruce E. Endy, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Barton A. Hertzbach, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### I.

On April 28, 1969, Anna F. Powell (hereinafter referred to as the plaintiff or claimant) filed an application for disability insurance benefits with the Department of Health, Education and Welfare (hereinafter referred to as the Secretary or defendant) at its branch office in Philadelphia, Pennsylvania. Plaintiff filed her claim pursuant to Title 42, United States Code, Section 423 (Social Security Act), alleging, *inter alia,* that because of a fracture of her left humerus she was unable to work since October 5, 1967. Her claim was approved and she was granted disability insurance benefits through April of 1970, when her benefits were terminated. Thereafter, the claimant requested and was granted a hearing on the merits of her claim; said hearing was held on April 14, 1971. The hearing examiner found that the claimant was not disabled within the meaning of the Act. Plaintiff appealed this decision and on September 28, 1971, the Bureau of Hearings and Appeals, by letter, informed plaintiff that:

> "Your request for review of the hearing examiner's decision has been carefully considered by the Appeals Council. The Council's consideration of your request has included all the evidence in your case, . . .. *Evidence in addition to that which was before the hearing examiner has been received by the Appeals Council.*
>
> "*The Appeals Council has concluded that the decision of the Hearing Examiner is correct.*" (Tr. 4) (Emphasis supplied)

This decision thus became a final decision of the Secretary, and as a result, claimant has requested a review of that decision by this Court pursuant to Title 42, United States Code, Section 405(g).[1] Hodgson v. Celebreeze, 312 F.2d 260 (3rd Cir. 1963).

---

1. Section 405(g) reads in pertinent part as follows:

 "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business . . . ."

Presently, before the Court are motions for summary judgment filed by both parties. For reason which shall appear hereinafter, we grant plaintiff's motion, and deny defendant's motion.

## II.

### Standards for Review

Title 42, United States Code, Section 405(g) in relevant part provides that: "The findings of the Secretary as to any fact, *if supported by substantial evidence, shall be conclusive . . .*" (Emphasis supplied)

■ The crucial language of this section and the focus of our review in this case is the determination of whether there is "substantial evidence" to support the decision of the Secretary. If so, that decision must prevail.

Substantial evidence has been defined by the Supreme Court as ". . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citing from Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Similarly, the Court of Appeals for the Third Circuit has defined "substantial evidence" as ". . . evidence which a reasoning mind would accept as sufficient to support a conclusion. 'It consists of more than a mere scintilla of evidence but may be less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3rd Cir. 1971), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).

■ Thus, it is well settled that if there is "substantial evidence" to support the decision of the Secretary, his decision must stand. Weisenfeld v. Richardson, 463 F.2d 670 (3rd Cir. 1972); Ginsburg v. Richardson, supra. However, it is the duty of this Court in reaching a determination to review the entire record as a whole. Gentile v. Finch, 423 F.2d 244 (3rd Cir. 1970).

■■ The claimant has the burden of establishing that she is disabled within the meaning of the Act, 42 U.S.C. § 416(i)(1); Domozik v. Cohen, 413 F.2d 5 (3rd Cir. 1969); Lewis v. Gardner, 396 F.2d 436 (6th Cir. 1968). In order to establish her claim of disability, the claimant must show (1) the extent of her mental or physical impairment, and (2) that the extent of her mental or physical impairment results in her inability to engage in "any substantial gainful activity". Janek v. Celebreeze, 336 F.2d 828, 833 (3rd Cir. 1964).

Utilizing the aforementioned legal standards, we now proceed to an examination of the entire record in this case.

## III.

### Medical Evidence

Presently, claimant is a forty-seven year old female residing with her daughter and six (6) children; her formal education terminated at grade seven (7). (TR. 29). For fourteen years prior to 1964, plaintiff worked as a short-order cook at Metropolitan Hospital in Philadelphia. It is undisputed that she can no longer engage in that occupation. It is also uncontroverted that at various times before 1964, plaintiff worked as a domestic, and cigar wrapper on occasions. Plaintiff has done "no other type of work". (TR. 31).

Sometime in 1964, plaintiff resigned her job as a short-order cook to reside with her daughter and help care for her four children. Some two years later on October 5, 1967, plaintiff accidentally fell through a porch railing and fractured her left humerus. On the basis of this physical injury, plaintiff requested and was granted disability insurance benefits.

On February 25, 1970, Dr. Resnick, a consultant orthopedic surgeon for the department, reported that "She [the plaintiff] still has pain in the region of the left shoulder. The patient complains of generalized tenderness and pain on all ranges of motion of the left shoulder. Tenderness is present on palpation, gen-

erally about the shoulder and the entire upper arm." However, on the basis of an x-ray examination, he concluded that "the fracture of the humerus has healed solidly and is in good position." * * * "I estimate the permanent partial physical impairment associated with the healed fracture and the residual limitation of shoulder motion to be equivalent to 10% of the upper extremity or 6% total." (TR. 98, 99). In addition Dr. Corn, an orthopedic surgeon, had reported on January 30, 1970, that the fracture had "healed completely." Relying on these reports the hearing examiner concluded that the basis for claimant's original disability (i. e., fracture of her left humerus) had ceased to exist as a grounds for disability insurance as of "February 1970". Accordingly, her disability insurance benefits were terminated as of April 1970.

On August 27, 1970, asserting anew her right to disability insurance, plaintiff was interviewed at the District office of the Social Security Board; the interviewer observed and reported, *inter alia:*

"II. Progression of Condition

"she had to be taken to emergency ward 8/24/70 because she could not walk at all—arthritis." (TR. 76).

"III. Effects of Current Condition

*"she has developed arthritis in her right leg. She gets sharp pains in her knee cap and the leg stiffens up."* (TR. 76).

"VII. Observations

"This was a very obese woman with many scars on her left shoulder. *She could hardly stand up because her leg stiffened. She limped away from the desk. She was brought to the BO by her daughter."* (TR. 78). (Emphasis added).

Three days later on August 30, 1970, plaintiff was admitted to Pennsylvania Hospital where her condition was diagnosed as Degenerative Arthritis of the right knee, and possible Thrombophlebitis of the right leg. The treatment prescribed was "bed rest with leg elevation and warm soaks." (TR. 102, 123). Because plaintiff continued to have knee pain when walking, x-rays were taken in an effort to learn the etiology of this pain. It was found that there was degeneration of the lateral meniscus and possible fluid accumulation in the area of the right knee. At this point, the knee was aspirated, the pain subsided, and the knee generally improved. Plaintiff was discharged on September 21, 1970.

On October 21, 1970, plaintiff was readmitted to Pennsylvania Hospital because the pain in her right knee persisted. On October 23, 1970, an "Arthrotomy of the right knee and excision of lateral meniscus of right knee" was performed by Drs. Rothman and Saul. (TR. 138). Thereafter, plaintiff was discharged on November 24, 1970, by Dr. James P. Marvel who reported that "There is no effusion of the [right] knee and the patient is able to flex to 90 degrees with full extension against gravity." (TR. 139).

At the time of discharge, Dr. Marvel also recommended "progressive resistive exercises, continue with cane support." and that plaintiff "return in three weeks". (TR. 139). In accordance with Dr. Marvel's direction, plaintiff returned on December 15, 1970, for a physical examination of the knee and medical treatment, and Dr. Marvel noted:

"There is some continued synovial thickening of the right knee, and the patient relates that she fell at home on this knee last week. . . . *There was tenderness over the thickened synovium and over the patella.*

"Betamethasone was injected into the right knee, and the patient was advised again in a program of progressive resistive exercises. *Feel that she should continue cane support."* (TR. 140) (emphasis supplied).

Again, on January 12, 1971, Dr. Marvel in his progress notes, after a visit by plaintiff, reported:

*"Is experiencing some discomfort in the right knee which appears to be on a degenerative joint disease basis.* Received considerable relief from the previous steroid injection in this knee and the knee was again injected with Betamethasone." (emphasis supplied).

On the basis of the foregoing medical evidence, the examiner found that "the claimant's other impairment-residuals of the right knee, meniscectomy and arthritis, possible mild cardiomegaly and thrombosis of the right leg have not been established as disabling." (TR. 20). This finding is totally unsupported by the objective medical evidence in this case. Indeed, the objective medical evidence supports plaintiff's assertion that she has lost mobility and ambulation in her right leg since the operation.

In addition to the aforementioned medical evidence, the Appeals Council had additional medical evidence before it; a letter from Dr. Marvel summarized the physical condition of plaintiff as of July 1971; it stated, *inter alia:*

"The patient's post operative recovery *has been complicated by the significant degenerative arthritis involving this knee which has considerably incapacitated her.* She has been seen at regular intervals in our offices, the last occasion being on 1 July 1971. *At that time the patient required continued cane support for ambulation and had continued with some symptoms of giving away of this knee joint. In addition, she has had occasional swelling in the knee joint.* She has been treated by conservative measures with exercises and steroid injections periodically. At the present time, we feel most of her symptoms are on the basis of degenerative joint disease involving the right knee. At the present time I feel that the patient requires cane support for ambulation and that she is *unable to be on her feet for more than 30 to 45 minutes at a time. She is certainly unable to be doing repeated bending of this extremity as it is restricted in motion to approximately 90 degrees of flexion. She is unable to climb stairs and is essentially almost completely incapacitated by the problems involving the right knee."* (emphasis supplied).

In spite of this letter, and all of the existing medical evidence, the Appeals Council affirmed the hearing examiner's decision. Clearly, the medical evidence when viewed in its entirety does not in any way support this decision.

■■ The Social Security Act and the regulations thereunder permit subjective evaluations in the determination of a claimed disability.[2] Symptoms which are real to the claimant may alone support a claim of disability. Ber v. Celebreeze, 332 F.2d 293, 299 (2nd Cir. 1964). Thus, Congress chose not to limit the kind of medical evidence which may support a claim of disability. Bittel v. Richardson, 441 F.2d 1193, 1195 (3rd Cir. 1971).

Claimant testified at the hearing (held on April 14, 1970), that she could not put all her weight on the right leg and that the leg was ". . . worse [after the operation] . . . cause when I walk . . ., it gives out." (TR. 37). Plaintiff further testified, *inter alia,* that:

"Q What gives out the knee?

"A Yes, it gives out as you walk.

"Q I see you have a cane, do you walk with a cane?

"A Yes, I have to walk with it, I can't half walk.

"Q When did you begin walking with a cane?

"A. *Ever since I been operated on.*

"Q You didn't use a cane before?

"A No, I didn't.

---

2. 20 C.F.R. § 404.1502(a) requires that a determination of disability be made from "all the facts".

"Q After your operation, you began using a cane?

"A *After I was operated on I've been using a cane.*

"Q Now what complaint do you have—you say your left shoulder still bothers you.

"A It still bothers me.

"Q But what's your major trouble now, the one that a—

"A *The real trouble?*

"Q The real trouble, yes.

"A *It's my leg.*

"Q Now, it's your leg?

"A *It's my leg more . . . it's my leg.*

"Q Your main complaint now is the —.

"A *Main thing is my leg.*

"Q Right leg?

"A *Yes, my right leg, I can't do nothing, and when I go up stairs. I have to, when I go upstairs and I come downstairs, I walk backwards, I don't walk forwards.*

"Q Now what did you say—your right leg—can you walk—how far can you walk, now?

"A I can walk—I can walk far enough without the stick, yes.

"Q Could you walk several blocks with your stick?

"A No, I can't walk that far.

"Q How many blocks can you walk with your stick?

"A I ain't never tried.

"Q With your cane—can you walk three or four blocks?

"A Yes, maybe.

"Q How about sitting, do you have any trouble sitting?

"A I have some trouble.

"Q No trouble?

"A You know—like *when you raise up like that*—you know.

"Q Wait a minute.

"A Like that at first you have pain too a —.

"Q You still have—you claim you have pain around the knee.

"A Yes, I still have it.

"Q Did you get a . . .

"A *I told my doctor but he said he couldn't do nothing about it.*
(T.R. 38–39) (emphasis supplied).

✳ ✳ ✳ ✳ ✳ ✳

There is not one iota of objective medical evidence which contradicts the subjective complaint of the plaintiff. Indeed, all of the objective medical evidence supports the validity of the symptoms asserted by the plaintiff.

From a careful reading of the hearing examiner's findings, evaluation, and decision on the evidence, it appears that his decision to deny disability (to the plaintiff) was premised upon the "complete healing" of the fracture to her left shoulder. However, after a review of the entire record in this case, it is inescapable that the thrust of plaintiff's claim of disability is not based on that single injury (fracture to her left humerus), but rather upon a combination of injuries including the pain and limited mobility of her left shoulder, and the restricted mobility and ambulation caused by the degenerative arthritis of her right knee.

Thus, the uncontradicted medical evidence requires a finding that plaintiff is incapacitated. Further the testimony of the Secretary's own vocational expert when considered with the medical evidence, clearly establishes that plaintiff is disabled within the meaning of the Act. The following hypothetical question was then posed to the vocational expert:

"Q Now, you've answered the question on one assumption, now I'll as[k] you to assume this: Assuming I should find that Mrs. Powell, the claimant in this case, has considerable pain in the left shoulder, still has the residual of this accident—she was fractured; she has inability to use complete use of her left shoulder and that further has, as I indicated pain, and also she has difficulty with her right knee and leg

when she had an operation. *Also there is an indication that she has some thrombophlebitis at times and I should find, because of the combination of her impairments, the claimant is significantly restricted in her physical activity, in moving about, standing, walking and sitting—what would your opinion be as to ability to engage in the various jobs [3] that you have just mentioned?*

"A *Well, in answer to the second assumption, which of course we'll have to take in—due to the pain factor—the ability to get to and from the job*

. . .

"Q Yes.

"A *I would then say she would be unemployable, not only for those jobs but for all jobs under that last assumption.*" (TR. 52) (emphasis supplied)

While posed as a hypothetical, the question asked actually contained the only facts supported by the evidence in this case. The medical evidence, as well as the testimony of the vocational expert, clearly establish the disability of plaintiff within the meaning of the Social Security Act.

 We find, after a thorough review of the entire record, including the uncontroverted objective and subjective medical evidence, claimant's work history, educational background, and age, that plaintiff is " . . . precluded by reason of her physical disability from holding any substantial, gainful employment", and the contrary finding by the Secretary is not supported by substantial evidence. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Thus, plaintiff's motion for summary judgment is hereby granted; defendant's motion for summary judgment is hereby denied.

---

3. On a previous hypothetical Mr. Friedman (Vocational Expert) indicated that if plaintiff could ambulate she was suited to do such jobs as simple sorting and packaging, assembly operations, inspections, single machine operation, tray loading, and conveyor belt packaging. (TR. 50).