William W. HOWERTON

v.

Elliott RICHARDSON, Secretary of
Health, Education and Welfare.

Civ. A. No. 72–2421.

United States District Court,
E. D. Pennsylvania.

March 12, 1974.

Robert J. Levis, of Levis & Connors-Swanick, Media, Pa., for plaintiff.

Michael B. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HIGGINBOTHAM, District Judge.

The plaintiff, William W. Howerton, here seeks review of the final decision of the Secretary of Health, Education and Welfare, denying his claim for disability insurance benefits under the Social Security Act.[1] The plaintiff alleges he is unable to work due to a condition known as pansinusitis. Upon consideration of the testimonial and medical evidence and after careful review of the record as a whole I have concluded that the decision of the Secretary is supported by substantial evidence, and that therefore the defendant's motion for summary judgment must be granted.

### I.

Born on March 7, 1914, the plaintiff is a college graduate who received an engineering degree from Georgia Institute of Technology in 1936. Following his

---

1. 42 U.S.C. § 301 et seq.

graduation, he worked first as a research chemist until 1939 and then as a chemical engineer involved primarily in the production phase of a company, Joseph E. Siegerman and Sons, which produced alcoholic beverages. In 1941, the plaintiff was employed at the Edgewood Arsenal in Maryland, where for two years he was engaged in the development of incendiary materials. In 1943, he joined the U. S. Department of Agriculture as a chemical engineer in its Eastern Research Laboratory where he worked for five years. From 1952 to 1959, he worked principally in sales engineering, although at times he was employed as a sales manager and technical director. During this period, he was also retained as a representative of an electronics, rubber, and plastics company, calling on other companies both as a salesman and to provide technical advice. In 1959, Mr. Howerton formed his own chemical sales company, Howerton Chemical Corporation. This enterprise was a close corporation in which he and his wife were principal stockholders and from which he received a salary until 1970.

From 1963 until August 1970, along with his other business endeavors the plaintiff worked as a research chemist and supervisor of chemical research projects in the Naval Air Development Center at the Philadelphia Navy Yard. In 1964, Mr. Howerton while employed at the Naval Air Development Center began to develop headaches. Over a period of time these pains grew more severe and he began to complain of pains in his frontal sinuses. He reported these symptoms to his family physician, Dr. Joseph McCadden, a general practitioner.

On November 14, 1967, Dr. McCadden disclosed that he had treated the plaintiff on various occasions since 1964 for sinusitis and that he suffered from chronic infections and pain in his sinuses with resultant complication of headaches and arthritis of the neck which appeared to be worsening. Plaintiff had also experienced bleeding of the mucous membrane. Dr. McCadden believed that the plaintiff's condition had been caused primarily by prolonged exposure to low concentrations of methylene chloride and possibly other vapors in his work environment. He appeared to have developed a sensitivity to these irritants which made him sensitive to drafts causing susceptibility to infection.

Because of the persistence of his condition, plaintiff was advised by Dr. McCadden to consult other physicians. Dr. Lawrence J. McStravog, a specialist in Otolaryngology, examined the plaintiff in the Fall of 1969. An X-ray examination was given by Dr. Thomas C. Jacob, a specialist in Radiology, who diagnosed plaintiff's condition as pansinusitis. He was also examined by Dr. Heinrich Brieger, a retired physician, who concurred in the opinion of Dr. Jacob.

In August 1970, the plaintiff was placed on disability from the Navy Department because the deterioration of his sinus condition prevented the further performance of his duties as a polymer research chemist. This position required prolonged exposure in the laboratory to chemical fumes to which plaintiff had developed an adverse physical sensitivity in his sinus passages. Due to this disability, plaintiff is receiving workmen's compensation from the United States Government in the amount of $560.00 every two weeks.

On December 8, 1970, plaintiff applied to the Social Security Administration of The Department of Health, Education and Welfare for disability insurance benefits pursuant to Section 223 of the Social Security Act, as amended, 42 U. S.C. § 423. Plaintiff represented in his application that he suffered from a medical impairment diagnosed as pansinusitis and that he had become unable to work because of this disability on August 14, 1970.

The Administration's Division of Initial Claims for the Bureau of Disability Insurance determined that plaintiff did not meet the disability requirements of the Act and notified plaintiff on Sep-

tember 28, 1971, of its determination. Plaintiff filed a request for reconsideration but the Division of Reconsideration upheld the agency's initial decision after an independent re-evaluation of plaintiff's claim.

On March 16, 1972, plaintiff filed a hearing request with the agency's Bureau of Hearing and Appeals, stating his disagreement with the determination made on his claim; he gave as his reason for such disagreement the existence of additional medical evidence in his case. Plaintiff submitted this evidence and a hearing was held on June 15, 1972. Testimony was taken and all medical reports were admitted into evidence without objection.

The hearing examiner determined that on the basis of the evidence plaintiff was ". . . not entitled to a period of disability under Section 216(i) or to disability insurance benefits under Section 223 of the Social Security Act, as amended." (Tr. 17). The Bureau's Appeals Council upheld the hearing examiner's decision which then became the final decision of the Secretary of Health, Education and Welfare on plaintiff's claim.

Plaintiff timely filed his complaint with this Court seeking review of the final decision of the Secretary.[2] The Secretary filed his answer as well as a motion for summary judgment.

## II.

Title 42, United States Code, Section 405(g) provides, in pertinent part, as follows:

"As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The find-

ings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *."

Substantial evidence has long been defined as ". . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); Powell v. Richardson, 355 F.Supp. 359 (E.D.Pa.1973). Another legal formulation used to define substantial evidence is that "'[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); Powell v. Richardson, *supra*, 355 F.Supp. at 361.

To qualify for disability insurance benefits an individual must be under a "disability" as defined in the Social Security Act. The term "disability" is defined in Section 223 of the Social Security Act[3] to mean:

"(d)(1) * * *

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

"(B) * * *

"(2) For purposes of paragraph (1)(A)—

"(A) an individual * * * shall be determined to be under a disability *only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists*

---

2. 42 U.S.C. § 405(g).

3. 42 U.S.C. § 423.

*in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(B) * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

"(4) * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

(Emphasis added.)

■ At no time in the agency proceedings nor in the present action has the Secretary disputed plaintiff's claim that he suffers from a medical impairment. To the contrary, at each stage of the proceedings the Secretary has found that the plaintiff does suffer from a sinus condition. However, as Section 223(d)(2)(A) clearly indicates, the term disability encompasses more than the existence of a medical impairment, for the *extent* of the impairment must be so severe that a claimant "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."

The ultimate issue in this case is whether there is substantial evidence to support the hearing examiner's finding that plaintiff could engage in other "substantial gainful work which exists in the national economy."

### III.

■ The record indicates that plaintiff's respiratory tract is sensitive to certain irritants in the air he breathes. According to plaintiff's testimony, this sensitivity is manifested by shortness of breath, headaches, and pains in the sinus areas, although he experiences no significant swelling in these areas. Aside from the laboratory chemical fumes, plaintiff complains of hypersensitivity to tobacco smoke, the residual solvents from inks used in newspaper print, and automotive exhaust fumes. (Tr. 31–33). In general, plaintiff characterizes his condition as follows:

" . . . apparently I have been so sensitized that any type of irritant that normally doesn't—that doesn't normally bother let's say a normal person affects me very severely. So I have since then to experience—I've had to pretty much stay out of any big central type building. This even applies to movie theatres. I've pretty much through experience had to eliminate this type thing. Now, when I come down town in an area like this —heavy motor traffic and what have you—very bad." (Tr. 33).

In support of his claim, plaintiff introduced evidence of the medical opinions of his examining physicians. The reports and opinions of Dr. McCadden, Dr. Theodos, and Dr. Woodrow Schlosser are given particular emphasis as evidence of the severity of plaintiff's medical impairment.

On November 5, 1971, Dr. McCadden wrote a letter to the Director of Civilian Personnel of the Naval Air Development Center in reference to a new position which was being offered to plaintiff as a substitute for his former position with the Center as research chemist. The position was that of Classified Materials Control Engineer. It was the opinion of Dr. McCadden, as reported in his letter of November 5th, that plaintiff should not accept the position because, he stated, "In the new position, Howerton

would be regularly exposed to automobile fumes, and residual solvent in ink from periodicals." (Tr. 107).

Dr. Theodos stated in his report of December 2, 1971, that his ventilation studies suggested a moderate degree of ventilation impairment with some broncho-spasm. He suggested that plaintiff could do some work ". . . provided he were not exposed to the respiratory irritants to which he reacts." (Tr. 112). Dr. Schlosser, a specialist in Otolaryngology, was of the opinion that plaintiff was highly sensitive to irritants in the air he breathes and that his findings indicated no "therapy other than complete avoidance of any substances that are in the atmosphere which are of a chemical nature that will cause irritation of this mucous membrane." (Tr. 122).

Plaintiff contends that the evidence is conclusive that he is hypersensitive to irritants found in abundance in the working environment of any employment position potentially available to him. He also contends that there is no evidence of record to substantiate the hearing examiner's denial of his claim. It is the crux of the hearing examiner's findings that plaintiff's impairment would not prevent him from performing "light and sedentary work in a suitable environment" (Tr. 16) and that substantial gainful employment with such a "suitable environment exists in the national economy." (Tr. 11).

Dr. Phillip Spergel; Director of Psychological Services for the Moss Rehabilitation Hospital, testified at the hearing as a vocational expert on behalf of the Secretary. The hearing examiner asked Dr. Spergel to assume that he should find from the medical evidence that the plaintiff retained the physical and mental capacity to perform light or sedentary work but not work performed where he would be exposed to the type of fumes that would cause severe headaches or discomfort. He was further asked to consider the plaintiff's age, prior occupation, and vocational background and to make any suggestions concerning the type of work he would be able to do. (Tr. 53).

Dr. Spergel testified that he had researched numerous jobs for which the plaintiff had transferable skills, and which would be done indoors, in normal rooms, in a good atmosphere, free of hazards, fumes, odors, and toxic conditions. He described the following jobs as being within the plaintiff's capacity: (1) standards and analysis engineer where standards and methods to be applied to performance are developed; (2) pattern engineer, developing and initiating precision manufacturing processes; (3) quality control director, planning and coordinating quality programs to insure that products are consistent with standards; (4) cost analysis engineer; (5) estimator; (6) draftsman; and (7) engineering clerk. (Tr. 53–54).

The vocational expert further testified that the jobs he enumerated existed in many different industries including the electronics industry, government service, and the light, heat, and power industries (Tr. 54). He estimated that there were millions of these jobs in the national economy and thousands in the local economy of the area where the plaintiff lived (Tr. 55). He also stated that if the plaintiff was as severly restricted in his physical activities *as he described himself,* he would be "unemployable" because of being allergic to almost any irritant that does not affect the average individual. (Tr. 56).

The plaintiff argues that the medical evidence proves that his medical impairment causes in him a physical reaction to respiratory irritants normally found in the working environment of the type of jobs enumerated by Dr. Spergel. Further, he contends that the resulting physical reaction is of such severity as to constitute a medical disability under the Act. I am of the opinion that there is substantial evidence considering the record as a whole to support the hearing examiner's conclusion that plaintiff is capable of engaging in light and sedentary work under clean atmospheric conditions, and that such work exists in the

national economy as testified to by Dr. Spergel. The hearing examiner relied in part upon the medical reports submitted into evidence by plaintiffs. In these reports the medical examinations did not reveal symptoms of such an extreme nature as might reasonably be anticipated would accompany a medical impairment of the magnitude complained of by Mr. Howerton. For example, plaintiff in his brief quotes extensively the conclusions of Dr. Woodrow D. Schlosser, an Otolaryngologist, who recommended complete avoidance of all chemical substances which would irritate plaintiff's mucous membranes, but the symptoms that Dr. Schlosser observed were set forth thusly:

> "Examination of his ears showed both canals and drums to be normal. Examination of his nose showed a mildly irritate [sic] mucosa. I saw no evidence of any mucopus. There was no evidence of any polypi. On Nasepharyngoscopy, the post nasal space was clean for lesions, however, the mucosa had a somewhat mildly irritated and glistening edematous appearance. Examination of his throat showed some mild redness of the mucosa in the lateral gutters. Mirror examination of the larynx showed the vocal cords to appear normal and they have normal mobility. There were no lesions seen in these areas." (Tr. 121, 122).

Although these symptoms are consistent with a diagnosis of sinusitis, they equally support a reasonable inference that plaintiff's impairment is not sufficiently severe to constitute a medical disability under the Act. Also the report of Dr. Theodos indicates that the avoidance of such chemical irritants is not necessarily inconsistent with the performance of light and sedentary work. (Tr. 112).

The hearing examiner additionally considered plaintiff's activities after the termination of his employment as a chemist with the Navy Department. In evaluating the evidence, the examiner stated:

> "Furthermore, if the claimant's sinus condition was of disabling severity it would be expected that his acitivities would be markedly restricted. However, according to his testimony, he continues to drive his car to go shopping each week, and occasionally takes longer trips, despite the fact that he is allergic to automobile exhaust fumes." (Tr. 9).

Clearly the hearing examiner based his final decision upon the evidence before him after a careful and thorough analysis of all evidence in the case. A significant portion of that evidence is of a subjective quality. In view of the opportunity of the hearing examiner to observe the demeanor of the plaintiff as he related the severity and extent of his impairment, I am particularly careful not to substitute my inferences drawn from a cold record for those of the hearing examiner who had the opportunity to view the live testimony. I do not seek to minimize the discomfort that plaintiff experiences due to his condition, but the Secretary's findings are supported by substantial evidence upon the record as a whole, and I must therefore grant defendant's motion for summary judgment.