Pauline GINSBURG, Appellant,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare.

No. 18147.

United States Court of Appeals, Third Circuit.

Argued Sept. 17, 1970.

Decided Jan. 20, 1971.

As Amended Feb. 19, 1971.

Rehearing Denied Feb. 25, 1971.

Joseph Ginsburg, Summit, N. J., for appellant.

Ronald R. Glancz, Civil Division, Appellate Section, Dept. of Justice, Washington, D. C., (William D. Ruckelshaus, Asst. Atty. Gen., Frederick B. Lacey, U. S. Atty., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., on the brief, for appellee.

Before BIGGS, SEITZ and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This case arises on appeal from three district court orders: (1) granting the motion for summary judgment made by appellee, the Secretary of the Department of Health, Education and Welfare; (2) quashing the appellant's subpoena duces tecum which had demanded "all records and reports and other documents in possession, custody and control of [the] Department of Health, Education and Welfare, dealing with and concerning the full investigation conducted by said Department of HEW into the hearing in Newark, N. J., on September 15 and October 13, 1967, by hearing examiner Joseph J. Goldsmith on [the] claim of Pauline Ginsburg for Social Security benefits * * * "; and (3) granting the appellee's motion to strike ap-

pellant's request for certain admissions by the appellee that the administrative hearing was unfair. This court has jurisdiction of the appeal from a final decision as conferred upon it by 28 U.S.C. § 1291. The District Court had jurisdiction of the petition for review pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g).

Appellant, Pauline Ginsburg, filed an application on December 3, 1965 for old-age insurance benefits in which she claimed her date of birth was March 16, 1892. A determination was made by the Social Security Administration that her date of birth was March 16, 1895 and that she was entitled to monthly benefits beginning December 1964, but that based on her expected self-employment earnings for the year 1965, payment of benefits could not be made while she continued to earn substantial income. On June 17, 1966, appellant filed a request for reconsideration in which she again alleged that she was born on March 16, 1892 and that in order to appear younger she had altered her records to show that she was born in 1895. On reconsideration, it was again found that she was born in 1895.

After a hearing was held on September 15, 1967 and October 13, 1967 to determine whether appellant was born on March 16, 1892 as alleged by her, the hearing examiner found "that the authentic, convincing evidence as required by the Social Security Act, as amended, shows and it is determined that the [appellant's] date of birth is March 16, 1895." On August 15, 1968, the Appeals Council denied the appellant's request for review.

On August 27, 1968, appellant filed a complaint in the United States District Court for the District of New Jersey demanding that the decision of the Secretary be reversed. On December 22, 1968, appellant filed certain requests for admissions. A hearing was held on February 24, 1969 on appellee's motion to strike requests for admissions. On March 13, 1969, the district court granted this motion. Appellant then served a

subpoena duces tecum on the Department of Health, Education and Welfare seeking an internal investigative report of the Social Security Administration. Finally, on July 1, 1969, the District Court quashed the subponea and granted appellee's motion for summary judgment.

### I. Substantial Evidence Test

The first question faced by this court is whether the District Court erred in granting the appellee's motion for summary judgment. This, in turn, depends upon whether the District Court correctly applied the standard for judicial review of the Secretary's decision. The standard appears as part of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, *if supported by substantial evidence,* shall be conclusive * * * *." (Emphasis added.)[1] "Substantial evidence" means evidence which a reasoning mind would accept as sufficient to support a conclusion. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4 Cir. 1966). Applying this definition, we have carefully examined the administrative record and, like the District Court, find substantial evidence to support the finding by the hearing examiner that the appellant was born March 16, 1895.

The documentary evidence presented at the hearing can be summarized as follows:

(1) A school record from Oregeev Women's High School, Oregeev, Russia, dated June 14, 1911, indicating a date of birth of March 16, 189– (last digit undecipherable);

(2) A Russian passport, dated January 23, 1923, indicating that appellant was then 28 years old which would establish her birth date as 1894;

(3) A visa to leave Constantinople, Turkey for the United States, dated July 30, 1923, indicating that appellant was then 28 years old which would establish her year of birth as 1895;[2]

(4) A naturalization certificate, dated July 31, 1927, indicating that appellant was born in 1895;

(5) An application for a Social Security Account Number, dated April 11, 1958, indicating that appellant was born on March 29, 1895;

(6) An application for retirement benefits, dated December 3, 1965, indicating a date of birth of March 16, 1892;

(7) An affidavit by Luba Sheinson, a friend of appellant, dated December 22, 1965, indicating that appellant was born on March 16, 1892;

1. Appellant urges that the correct standard for judicial review of Social Security Administration decisions appears in the Administrative Procedure Act, 5 U.S.C. § 551 et seq. Section 10(e) of the Act, 5 U.S.C. § 706 (Supp. IV.), states, in relevant part, that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be * * * unsupported by substantial evidence. * * * *" There are no reported cases holding that the Administrative Procedure Act supersedes the Social Security Act with respect to judicial review of agency actions but there are several District Court cases in other jurisdictions holding that the Administrative Procedure Act must be read *in pari materia* with the appropriate section of the Social Security Act on the subject of judicial review. Couch v. Udall, 265 F.Supp. 848 (W.D.Okla.1967); Miller v. Ribicoff, 195 F.Supp. 534 (W.D.S.C. 1961); Rafal v. Flemming, 171 F.Supp. 490 (E.D.Va.1959); Julian v. Folsom, 160 F.Supp. 747 (S.D.N.Y.1958). We need not decide whether the Administrative Procedure Act supersedes the Social Security Act with respect to judicial review of final decisions of the Secretary for the standard of review in the Administrative Procedure Act is precisely the same standard of judicial review appearing as Section 205(g) of the Social Security Act.

2. Although the appellant's arrival record in the United States was not introduced into evidence, appellant conceded at the hearing that her arrival record indicated a date of birth of 1895.

(8) The records at the Hospital Service Plan of New Jersey, dated November 28, 1966, indicating that appellant was born on March 16, 1892.

In evaluating this documentary evidence as well as the oral testimony of the appellant and appellant's expert witness, the hearing examiner was guided by Social Security Regulation, 20 C.F.R. § 404.703:

"Evidence as to age

(a) *When required.* An applicant for benefits under title II of the Act [42 U.S.C.A. § 401 et seq.] shall file supporting evidence showing the date of his birth if his age is a condition of entitlement or is otherwise relevant to the payment of benefits pursuant to such title II [42 U.S.C.A. § 401 et seq.] Such evidence may also be required by the Administration as to the age of any other individual when such other individual's age is relevant to the determination of the applicant's entitlement.

(b) *Type of evidence to be submitted.* Where an individual is required to submit evidence of date of birth as indicated in paragraph (a) of this section, he shall submit a public record of birth or a church record of birth or baptism established or recorded before his fifth birthday, if available. Where no such document recorded or established before age 5 is available, the individual shall submit as evidence of age another document or documents which may serve as the basis for a determination of the individual's date of birth provided such evidence is corroborated by other evidence or by information in the records of the Administration.

(c) *Evaluation of evidence.* Generally, the highest probative value will be accorded to a public record of birth or a church record of birth or baptism established or recorded before age 5. Where such record is not available, and other documents are submitted as evidence of age, in determining their probative value, con-sideration will be given to when such other documents were established or recorded, and the circumstances attending their establishment or recordation. Among the documents which may be submitted for such purpose are: school record, census record, bible or other family record, church record of baptism or confirmation in youth or early adult life, insurance policy, marriage record, employment record, labor union record, fraternal organization record, military record, voting record, vaccination record, delayed birth certificate, birth certificate of child of applicant, physician's or midwife's record of birth, immigration record, naturalization record, or passport.

(d) *Certified copy in lieu of original.* In lieu of the original of any record, except a bible or other family record, there may be submitted as evidence of age a copy of such record or a statement as to the date of birth shown by such record, which has been duly certified (see § 404.701(g)).

(e) *When additional evidence may be required.* If the evidence submitted is not convincing, additional evidence may be required."

Since appellant failed to produce any public or church record of birth recorded before age 5, the examiner had to base his decision primarily upon an evaluation of the school record, the Russian passport, the visa, and the naturalization certificate.

Although the school record was the oldest document in the record, the hearing examiner did not err in stating that it was "of no value in ascertaining her year of birth." The appellant testified that she changed the date of birth appearing on the school record from 1892 to 1894 so that her mother-in-law would not realize that she was two years older. The last number of the date of birth is smudged and undecipherable; appellant's expert witness could not render an opinion as to the number. The only value which this document had was that

it tended to establish that appellant was born during the 1890's. The Social Security Administration concedes this point and the only issue before the examiner was the appellant's exact year of birth in that decade.

The second oldest document offered into evidence was a Russian passport, dated January 23, 1923, which indicates that appellant was then 28 years old. The original age appearing on the passport was also altered although it was not clear what the original age was or by whom it was altered. Appellant's testimony with respect to the passport was often confusing and contradictory.[3] Although she was hesitant at first to state that she made the change, she finally admitted that she had changed the original age from 30 to 28 in Constantinople so that she would appear younger to her prospective mother-in-law. Appellant's expert witness could not state exactly when the alteration was made and whether the alteration was made by appellant. He did state, however, that the original age appeared to be "30." He further stated that the ink used in writing the original age was oxidized before the alteration took place. He estimated that the time between the two writings was possibly a year.

The opinion of the examiner dealing with the passport appears as follows:

"The next document to be considered is her passport of January 23, 1923 which shows that her age given was '28' years and her year of birth would be 1894, if she was born on March 16th as she contends. The claimant's testimony that it was originally age '30' but she had changed the '30' to '28' in Constantinople while in route to America was admittedly full of lies. Mrs. Ginsburg's testimony on this point was contradictory and evasive. At one point she said she had altered her passport and at another point denied that she had done it. She ad-

mitted that she had lied. Mr. Haring, handwriting expert produced by her, testified that in his opinion it was not in her handwriting. He also stated that he was unable to say when the age '28' was made over the '30' in the passport or by whom it was made. Mrs. Ginsburg submitted samples of her handwriting at the hearing, but Mr. Haring could still not identify the number '28' as being in her handwriting on the passport as contended by her. His testimony showed that an alteration was made but not by the claimant. It is also unlikely that an immigrant from communist Russia would tamper, alter, and falsify her official passport document while in route to this country considering what the consequences would be. It is more reasonable to believe that the alleged alteration was made by a Russian Immigration employee to give her correct age as she gave it to him. Because of the claimant's admitted lying and contradictory statements, among other things, the Hearing Examiner finds that this questionable document has *no probative value* in ascertaining her age in accordance with the Regulations." (Emphasis added.)

While this court might disagree with the finding by the examiner that the passport had no probative value, we cannot state that this finding was clearly erroneous and not supported by the record. Regulation 20 C.F.R. § 404.703, *supra*, allows an examiner in determining the probative value to be given to a document, to consider all the circumstances attending its recordation. Since the probative value of the passport depends to a great extent upon the truthfulness of appellant's testimony, this court cannot reverse a finding by the examiner that he did not believe appellant's testimony. Foss v. Gardner, 363 F.2d 25, 26 (8 Cir. 1966); Crooks v.

---

3. Appellant's confusing testimony evoked sharp questioning from the examiner. Under the circumstances, we believe the examiner's pointed questioning was in order.

Ribicoff, 202 F.Supp. 566, 568 (W.D. Pa.1961). It was permissible for the examiner to conclude that the alleged alteration was made, not by appellant in Constantinople, but by a Russian immigration employee who asked appellant for her correct age. Maloney v. Celebrezze, 337 F.2d 231, 233 (3 Cir. 1964).

The next oldest document, and the oldest document without any alterations, was the visa received by appellant in Constantinople. This document clearly shows that appellant was born in 1895. Appellant maintains that the examiner erred in attributing "the highest probative value" to the visa. She argues that the date appearing on the visa was transcribed directly from the Russian passport and that the visa has no independent significance in determining appellant's age. There is, however, no evidence in the record showing that the birth date on the visa was taken from the passport. Also, appellant failed to introduce any evidence that it was the practice in Constantinople in 1923 when issuing a visa to take the age from the passport. Since the visa was the oldest document offered into evidence without any signs of alterations, we cannot state, as a matter of law, that the examiner erred in attributing to the visa "the highest probative value."

The next oldest document considered by the examiner was a naturalization certificate dated July 31, 1927 also indicating that appellant was born in 1895. Finally, appellant's application for a Social Security Account Number dated April 11, 1958 indicates that appellant was born in 1895.

■ The only documents clearly showing that appellant was born in 1892 were the application for retirement benefits dated December 3, 1965, the affidavit of appellant's friend dated December 23, 1965, and the statement of the Hospital Service Plan dated November 29, 1966. Since these documents were of relatively recent date and since they were either produced contemporaneously or after her application for old-age retirement benefits, the examiner did not err in concluding that these documents did not meet the standard of proof required by the regulations. We adopt the reasoning of Judge Rosenberg in a case remarkably similar to the instant case: "If, in fact, the plaintiff's birth was of a time as to entitle him to the benefits of the Act, by his own conduct he has so befuddled the circumstances as to virtually conceal the facts. The hearing examiner was required, and did, apply the rules of law to the evidence, and by his own judgment fairly concluded what was the plaintiff's birth date." Finkelstein v. Secretary of Health, Education and Welfare, 221 F. Supp. 361, 363 (W.D.Pa.1963).

■ Appellant further argues that even if there is substantial evidence to support the ultimate conclusion of the examiner, there is not substantial evidence to support each finding of fact upon which the conclusion is based. While we note a few findings of the examiner which are not supported in the record, it is unnecessary for this court to be in accord with all of the examiner's findings and reasoning as long as his ultimate conclusion is based upon substantial evidence. Lester v. Celebrezze, 221 F.Supp. 607, 611 (E.D.Ark.1963).

## II. Fairness of the Hearing

■ Appellant also asserts that she was denied the right to a fair hearing by the conduct of the hearing examiner. We have reviewed the entire record in this case, and while the conduct of the hearing examiner is subject to some criticism, we cannot say that it was so unfair as to constitute a denial of due process. Cupples Co. Mfrs. v. N.L.R.B., 106 F.2d 100, 113 (8 Cir. 1939). See also N.L.R.B. v. Stackpole Carbon Co., 105 F.2d 167, 177 (3 Cir. 1939), cert. denied, 308 U.S. 605, 60 S.Ct. 142, 84 L. Ed. 506 (1939). Furthermore, the transcript of the hearing does not support the contention of the appellant that the examiner displayed prejudice toward her. If the appellant felt that she was being deprived of a fair hearing, the

proper procedure would have been for her to request the examiner to withdraw from the case. Social Securities Regulation, 20 C.F.R. § 404.922.[4] Thus, appellant's failure to request withdrawal of the examiner during the hearing or in her request for review before the Appeals Council constitutes a waiver of her right to object to the conduct of the examiner. See the concurring opinion of Judge Clark in N.L.R.B. v. Baldwin Locomotive Works, 128 F.2d 39, 55–56 (3 Cir. 1942).

■ Appellant also maintains that she was deprived of a fair hearing because the assistant to the hearing examiner failed to record portions of the testimony of appellant's expert witness. This objection was also waived by the appellant at the administrative level. The alleged failure of the assistant to transcribe all of the testimony of appellant's expert witness was noted at the hearing and at that time the examiner gave appellant's attorney the opportunity to ask further questions in order to remedy any omissions that may have occurred. Furthermore, the Appeals Council advised the appellant's attorney that they would receive and consider any additional evidence bearing on the issues in this case. Cf. Paul v. Celebrezze, 337 F.2d 352, 353–354 (9 Cir. 1964), cert. denied, 381 U.S. 906, 85 S.Ct. 1452, 14 L.Ed.2d 287 (1965).

## III. Quashing of the Subpoena Duces Tecum and granting the motion to strike the Request for Admissions

Appellant also urges that the District Court erred in quashing her subpoena[5] requiring the production of an internal investigative report of the Social Security Administration directed to the conduct of the hearing examiner and in granting appellee's motion to strike her request for admissions. The subpoena and the request for admissions were intended to support two claims of procedural error: (1) a claim that the hearing examiner was unfair because he was, allegedly, incompetent, abusive and failed to properly consider the evidence and (2) a claim that the transcript of the hearing was incomplete. We have carefully examined the transcript of the hearing before the examiner and we cannot find substantial support for the claim made by the appellant that the hearing examiner was incompetent, unfair or failed to properly consider the evidence. As to the allegation that he was abusive in his treatment of the appellant, a careful examination of the whole record fails to convince us that he treated the appellant so hardily as to show bias or prejudice. The hearing was an abrasive one. The appellant did in fact prevaricate and admitted it. She was a difficult witness and the hearing examiner labored, over frequent objec-

---

4. The text of this regulation reads as follows:

"No hearing examiner shall conduct a hearing in a case in which he is prejudiced or partial with respect to any party, or where he has any interest in the matter pending for decision before him. Notice of any objection which a party may have to the hearing examiner who will conduct the hearing shall be made by such party at his earliest opportunity. The hearing examiner shall consider such objection and shall, in his discretion, either proceed with the hearing or withdraw. If the hearing examiner withdraws, another hearing examiner shall be designated by the Director of the Bureau of Hearings and Appeals or his delegate to conduct the hearing. If the hearing examiner does not withdraw, the object-

ing party may, after the hearing, present his objections to the Appeals Council, as provided in §§ 404.945–404.949, as reasons why the hearing examiner's decision should be revised or a new hearing held before another hearing examiner."

tions from her counsel, to elicit facts from her.

 Ordinarily intra-agency proceedings are not available to a court. In this connection the appellant depends on the Public Information Act, but omits reference to 5 U.S.C. § 552(b) (5) which exempts "inter-agency or intra-agency memorandums" from inspection. We need not and do not pass on the issue of whether the record of departmental proceedings looking to the conduct of a hearing examiner might be available under certain circumstances, for example, fraud in the agency tribunal itself, for the appellant does not suggest such a situation. We therefore in this case do not and need not go beyond the record of the proceedings before the hearing examiner and, as we have already said, we do not find that the hearing examiner was guilty of the conduct ascribed to him by the appellant. Cf. 5 U.S.C. § 706(2) (E). See Couch v. Udall, 265 F.Supp. 848, 849–850 (W.D.Okla.1967). We find the the court below did not err in quashing the subpoena and in granting appellee's motion to strike the request for admissions.

With respect to the contention that the subpoena and the request for admissions would have supported the appellant's claim that the transcript was incomplete, the appellant clearly waived this contention at the administrative level for reasons already stated in this opinion.

Judge Seitz agrees with the results reached by the majority but, as to the issues raised in the third section of the majority opinion, he believes that the applicability of the Freedom of Information Act is not properly before this court since it was not raised below. In addition, if there was any error in the district court's ruling on the subpoena and request for admissions, it was harmless error.

The judgment will be affirmed.