**Harry JACOBSON, Plaintiff,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant.**

**No. 74 Civ. 5059.**

United States District Court, S. D. New York.

Aug. 8, 1975.

1934 despite enforcement authority of Securities and Exchange Commission).

Harry Jacobson, pro se.

Paul J. Curran, U. S. Atty., by Thomas H. Belote, Sp. Asst. U. S. Atty., for defendant.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, Harry Jacobson ("Jacobson") seeks, pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U. S.C. § 405(g), to review a final administrative decision of the Secretary of Health, Education and Welfare ("the Secretary") rejecting Jacobson's contention that his retirement insurance benefits were incorrectly determined. As there is no dispute as to any material fact, this case is submitted upon each party's cross-motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons hereinafter stated, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

The Secretary determined, on May 22, 1974, that Jacobson's $187.40 monthly benefit was the highest allowable to him under the Act. The record reveals that he filed an original application for retirement insurance benefits on November 1, 1965 and was awarded a reduced monthly benefit beginning November, 1964 because he elected to receive benefits fourteen months before he reached age 65. Since that time, his benefits have been recomputed several times to give him credit for additional earnings. The latest recomputation, which considered earnings through 1971, increased his monthly benefit to $153.10 effective January, 1972. As a result of the 1973 amendments to the Act, Pub.L. No. 93–233, § 2(a) (Dec. 31, 1973), his benefit was raised by 20% to $187.40, effective September, 1972.

Upon review of the administrative record and the applicable law, the Court concludes that the Secretary correctly computed Jacobson's retirement insurance benefits.

### I. Law and Regulations

Section 202(a) of the Act entitles a person who is fully insured, has attained age 62, and has filed an application, to the payment of retirement benefits.

Section 215(a), (b) and (d) of the Act explain particularly how an individual's monthly benefits are computed. An individual's *primary insurance amount*, the benefits payable to a person

who elects benefits no earlier than age 65, is based on his *average monthly wage*. The average monthly wage is computed first by counting the number of years in the period beginning with 1951 [1] and ending with the year prior to which he reaches age 65.[2] These years are the recipient's *computation base years*. The number of elapsed years in the computation base years period remains constant and is the number used in later recomputations of benefits. This number, reduced by five, is the number of the *benefit computation years*.

Next, an individual totals his earnings for a period equal in years to his benefit computation years period, using only the years with the highest earnings. Since 1951, yearly earnings includable have been limited by a statutory maximum. The total of earnings thus determined is divided by the number of months in the benefit computation period and the quotient is the individual's average monthly wage.

Based on this average monthly wage, an individual's primary insurance amount, which is the amount of his monthly payment, is determined in accordance with a benefit computation table contained in § 215(a)(3) of the Act.

Pursuant to § 202(q) of the Act, the size of the payment which an individual receives after age 65 is reduced if he has been entitled to and has accepted benefits prior to that time. This reduction is equal to five-ninths of one percent of the primary insurance amount for each month before age 65 for which he has accepted early payments. In years subsequent to age 65, this reduced primary insurance amount is the base from which recomputations are made.

Section 215(f) of the Act provides for recomputation of the primary insurance amount to reflect additional earnings during any year in which an individual is entitled to retirement benefits, if those earnings would increase his benefits. This occurs if his earnings in that year are higher than earnings in the lowest benefit computation year actually used in the individual's last previous computation. In this recomputation, the years of higher earnings are substituted for years of lower earnings used in prior computations, in order to maintain the constant number of computation base years referred to above. Such a recomputation takes effect in January following the year in which the wages were earned.

II. *Application of Law and Regulations to Plaintiff in Computing his Primary Insurance Amount*

Jacobson attained age 65 in 1966. The number of his benefit computation years, used in calculating his average monthly wage, equals the number of years starting with 1951 and closing with 1966, less five, i. e., ten. In 1973, when Jacobson requested a hearing to question his latest recomputation of benefits, his earnings from the ten years of highest earnings during the period 1951 to 1972 totalled $34,695.20. This total, divided by 120 months (ten years) gives an average monthly wage of $289.00 and a corresponding primary insurance amount effective January, 1972 of $157.-90. However, pursuant to § 202(q), because Jacobson elected to receive benefits effective November, 1964, this recomputed amount is reduced by $4.80 to equal a monthly benefit effective January, 1972 of $153.10.

The 1973 Social Security Amendments provided a 20% increase in a recipient's

---

1. In cases where a worker's creditable wages for years before 1951 are more substantial than his earnings after 1950, years after 1936 may be considered in determining the average monthly wage. In this case, Jacobson has no earnings credited to his record prior to 1951.

2. Effective 1975, for both men and women reaching age 62 in that year and later years, the count will be made in the same way as it has been for women under prior law. That is, determine the number of years after 1950, (or 1936), and before the individual reached age 62.

primary insurance amount effective September, 1972, and Jacobson's monthly benefits were accordingly raised to $184.70.

### III. *Plaintiff's Arguments*

First, Jacobson argues that § 215(f)(2) expressly effects recomputations for individuals with wages or self-employment income for a year after 1965, eliminating from consideration all years prior to 1965. Thus, Jacobson contends, since the Secretary, in his latest recomputation of his benefits, considered all his earnings through 1971 and increased his monthly benefits effective January, 1972, his total computation base years should be seven, the elapsed period between 1965 and 1972. There would then be only two benefit computation years, and using the two years of highest earnings, 1970 and 1971, to compute his average monthly wage would give a significantly higher average than that determined by the Secretary. Accordingly, Jacobson claims entitlement to a higher primary insurance amount than his current benefits.

Clearly, Jacobson does not understand the mechanics of a recomputation. Section 215(f)(2) does not eliminate from consideration all years prior to 1965 in recomputing an individual's benefits. Rather, this section expressly incorporates by reference subsection (b)(2)(C) which defines the computation base years in a recomputation as starting in 1951, and, thus, clearly evidences that a recomputation does not affect the starting date of an individual's base period.

However, the closing date of an individual's computation base period is affected by a recomputation and, pursuant to § 215(f)(2), is that year in which a recomputation is made. Hence, the period of Jacobson's computation base years started in 1951 and closed in 1972. While his benefit computation period remained ten years, his computation base years period was accordingly extended from 1966 to 1972, and years of higher earnings were simply substituted for years of lower earnings used in a prior computation as described above. Jacobson's primary insurance amount, using these new years of higher earnings, was computed correctly by the Secretary at $153.10 monthly.

Second, Jacobson admits that he elected to receive benefits effective prior to reaching retirement age (Tr–44), but emphatically contends that receipt of these early benefits is a matter of right and, therefore, will not reduce the amount of benefits he receives after age 65.

Jacobson's reasoning is incorrect. Section 202(a), which defines entitlement to retirement benefits, expressly limits payments to the conditions of § 202(q). That subsection nowhere states nor implies that benefits received prior to age 65 are *gratis*. On the contrary, it expressly reduces an individual's primary insurance amount in effect on the date he reaches age 65, if he elects to receive benefits prior to retirement age. Accordingly, Jacobson's election to receive benefits early correctly resulted in a reduction, at age 65, in his retirement benefits.

Lastly, in his supplementary affidavit, Jacobson argues that defendant erred in denying him all benefit payments in 1970 because of excess earnings. § 203(b).[3] It is clear from a re-

---

3. Section 203(b) and (f) of the Act provides that an individual's primary insurance amount for any month shall be reduced by the amount of his *excess earnings* charged to that month. Excess earnings for taxable years ending after December, 1967 and prior to January, 1973 are computed as (1) $1 for each $2 of earnings over $1,680, up to and including $2,880; and (2) $1 for each $1 of earnings over $2,880. 20 C.F.R. § 404.431 (1973). So computed, if an individual's excess earnings exceed his primary insurance benefit for the same period, his benefits for that period are reduced to zero.

Pursuant to this section, in 1970 Jacobson's benefits were reduced to zero due to excess earnings.

view of the administrative hearing decision that the Secretary made no express findings of fact as to the applicability of § 203(b) to this case. Since the jurisdiction of this Court is limited to reviewing the administrative decision, it has no authority to hear Jacobson's argument *de novo*. *Ginsburg v. Richardson*, 436 F.2d 1146 (3rd Cir. 1971); *Julian v. Folsom*, 160 F.Supp. 747 (S.D. N.Y.1958).

For the above reasons, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

Settle order on notice.