James C. FORTE

v.

David MATTHEWS, Secretary of Health, Education and Welfare.

Civ. A. 75–2641.

United States District Court,
E. D. Pennsylvania.

Feb. 7, 1977.

Dianne M. Upson, Coatesville, Pa., for plaintiff.

Alfred Gollatz, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is a review of an administrative determination made by the Administrative Law Judge ("ALJ") that plaintiff Forte was not entitled to disability benefits under the Social Security Act. For reasons set forth below, the government's motion for summary judgment is granted and plaintiff's cross-motion is denied.

*FACTS*

Plaintiff, who was 34 years old at the time of the administrative proceeding, has attended business school and received a certificate from two years at vocational technical high school, specializing in computer programming and data processing (Tr. 34–36). His work history includes a year as an insurance salesman (Tr. 67), eight years as a steelworker (Tr. 73), and 9 months as a hospital security guard (Tr. 83). He left the insurance company because he felt his commissions were unsatisfactory (Tr. 47). He left the other jobs because of various injuries.

Plaintiff has been in a variety of accidents and has consulted a large number of doctors, whose reports are part of the ad-

ministrative record under review. Plaintiff's first injury was in an auto accident in 1964, whereupon he consulted Dr. Charles Butler, a general practitioner (Tr. 126). That final diagnosis was post-traumatic anxiety syndrome and whiplash injury of the neck (Tr. 105). The second accident, a fall in the steel mill, resulted in a visit to Dr. Butler in June, 1971, when plaintiff complained of tenderness and pain in the neck. He then left the mill, claiming he was unable to work (Tr. 805). Plaintiff was then referred to Dr. John Polcyn, a neurosurgeon, whose opinion is reported in Dr. Butler's report. (Tr. 105).

"His impression was that this was possibly a post concussion syndrome, but there was so much functional disorder that he was unable to pinpoint a diagnosis and suggested that the sooner the patient was rehabilitated in some type of work the better off he would be."

He was sent back to work in August, 1971, by Dr. Butler with restrictions on lifting and climbing. The company would not put him back due to these restrictions (Tr. 105).

A third accident, again auto, brought him back to Dr. Butler in October, 1971. The diagnosis was whiplash of the neck and contusion and sprain of lumbrosacral area (Tr. 108). At about that time, Dr. Butler indicated plaintiff needed treatment by a psychiatrist for his "functional and emotional disorder" (Tr. 108).

Dr. Walter Vernon, of Lukens Steel, first treated plaintiff following the steel mill accident, which occurred in May, 1971. Dr. Vernon's specialty is occupational medicine and internal medicine (Tr. 128). Dr. Vernon reported, after receiving Dr. Polcyn's diagnosis: "The patient failed to present any significant [physical] findings." (Tr. 111). All x-rays were normal. Dr. Vernon diagnosed the problem as a possible mild post concussion syndrome with a "moderately severe" anxiety reaction (Tr. 113).

In June, 1973, Dr. Butler concluded that plaintiff Forte had been "for all intents and purposes . . . totally disabled [since July, 1971] although he has been able to work for short periods of time" (Tr. 114).

The diagnosis included myositis of the neck, low back syndrome and functional disorder. In April of 1973, Dr. George Kent, an orthopedic surgeon, reported on his findings to the Bureau of Vocational Rehabilitation. He stated: "I believe his limiting factors are a combination of the neck and back pain." (Tr. 117). In August, 1973, Dr. Lawrence Adams, a neurosurgeon, also reported his findings on behalf of the Social Security Administration. Dr. Adams described plaintiff's complaints of pain, tenderness and difficulty of movement. "It is difficult to evaluate how much of this is voluntary or involuntary." (Tr. 119). He went on to say (Tr. 120):

"It is my feeling that his primary problem is psychological and that he is exceedingly accident-prone . . . I would tend to think he would have a difficult job maintaining employment because he is pre-occupied and apparently he is pre-occupied because he has multiple accidents. I would think that this is primarily a psychiatric problem, however."

In August, 1973, plaintiff's condition was also analyzed by a psychiatrist, Dr. Paul Barenberg, for the state agency. This was the first and only psychiatrically trained doctor consulted. Dr. Barenberg found no psychiatric disorder. "His limited functioning shows no signs of being on a psychiatric basis," he reported. (Tr. 121).

Dr. Butler reported, in a final letter requested by the ALJ, that he had seen plaintiff as late as November 21, 1974. "My impression at this time is severe anxiety neurosis." (Tr. 135).

Plaintiff filed an application for disability benefits on November 3, 1972, which was disallowed. Reconsideration was requested on June 6, 1973 and the disallowance was affirmed by letter September 12, 1973. Plaintiff then requested a hearing which was held before the ALJ on November 4, 1974 (Tr. 27). Following that hearing, on February 24, 1975, the ALJ found that plaintiff was not under a "disability" as defined in the Social Security Act. An appeal to the Appeals Council was denied as

untimely, so the final decision on review is of the ALJ of February 24, 1975 (Tr. 4).

Other than the medical reports indicated above and plaintiff's own testimony, the only other evidence before the ALJ was the expert testimony of Dr. Philip Spergel, a vocational psychologist. He offered his expert opinion, based on all record evidence, that claimant could do certain "light" work. He stated that he could return to his security guard or insurance sales jobs (Tr. 58). The limitations taken into consideration included only physical ones; no mention was made of plaintiff's alleged psychiatric difficulties, although he stated he had read all medical reports in evidence. There was no cross-examination of Dr. Spergel, as plaintiff was not represented by counsel.

Dr. Spergel also testified that, based on plaintiff's education, vocational background and age, he would also be qualified for certain clerical jobs (Tr. 59). He stated that all the jobs he had mentioned were available in the plaintiff's home area in considerable numbers (Tr. 60).

## DISCUSSION

Plaintiff first contends that the ALJ used the wrong legal standard in reaching his decision. The test for disability is two-pronged: (1) a determination of the extent of physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in substantial gainful activity. *Stancavage v. Celebrezze*, 323 F.2d 373 (3d Cir. 1963); *Baith v. Weinberger*, 378 F.Supp. 596 (E.D. Pa.1974). The burden for proving disability is on the claimant. *Farmer v. Weinberger*, 368 F.Supp. 1 (E.D.Pa.1973). Plaintiff did show the extent of his impairment through the medical reports. However, under the statute as amended in 1967, plaintiff must show that "he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in *any other kind* of substantial gainful work . . ." 42 U.S.C. § 423(d)(2)(A) (emphasis added). In *Woods v. Finch*, 428 F.2d 469 (3d Cir. 1970), the Court upheld a hearing examiner's disallowance of disabili-

ty benefits where plaintiff's condition would still allow him to do sedentary work. This statute imposes a "very harsh burden," but, as the Court of Appeals noted, "it is clear that we are bound by its wording." 428 F.2d at 470.

The ALJ found, based on all the testimony, that plaintiff is still able to do sedentary work. Therefore he is not "disabled" under the statute. Even if plaintiff is in fact unable to find such work, this finding conforms to this Circuit's interpretation of the law. In *Gentile v. Finch*, 423 F.2d 244 (3d Cir. 1970), the claimant was physically able to do light work, but the vocational expert said that he would not be hired even for that due to his condition. The Court of Appeals reversed the district court's holding and held that Congress had stated "in unequivocal terms that the intent of the amended definition was to make it clear that unwillingness of employers to hire the handicapped should not be considered in determining disability." 423 F.2d at 246. Therefore, it is clear that it is only the plaintiff's actual ability to do any type of work, not just his prior job, that finally determines whether or not he can be considered disabled. It is this standard that the ALJ used and that is the proper one in this circuit.

Second, plaintiff contends that there is not substantial evidence in the record to support the conclusion. The ALJ's result appears to turn on two principal pieces of evidence: Dr. Barenberg's report that there is not a psychiatric disorder and Dr. Spergel's testimony that plaintiff is still able to perform light or sedentary work. Both of these opinions amount to evidence which is capable of supporting the ALJ's conclusions, even in the face of the contradictory record evidence.

This Court is very limited in its review of the ALJ's decision. The statute, 42 U.S.C. § 405(g), requires that the agency findings be deemed conclusive if supported by substantial evidence.

" 'Substantial evidence' means evidence which a reasoning mind would accept as

sufficient to support a conclusion. 'It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966)." *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir. 1971).

In determining if the decision rests on substantial evidence, the Court must look at the record as a whole. *Baith v. Weinberger, supra.*

In looking at the record, it may first appear that the preponderance of the evidence weighs against the ALJ's decisions. However, even if that were true, this Court could still sustain the decision, according to *Ginsburg.* Four of the six doctors' opinions mention a psychiatric problem, yet that is not found by the ALJ. The ALJ found "that the claimant has no *significant* physical, mental or emotional impairment though he may have recurring neck and shoulder pain." (Tr. 15, emphasis added). The word "significant" indicates to this Court that the ALJ clearly considered all the evidence on the psychiatric disorder. He did not ignore evidence, which would be reversible, *Baith, supra.* Instead he examined it all and concluded it did not meet the standard of a "disability."

He might have viewed the evidence on mental disability in two ways. First, the report of Dr. Barenberg, as one of a Board-certified psychiatrist, is the only opinion which would be allowed into evidence in a trial. All the other doctors are testifying outside their areas of expertise; thus, their opinions as to plaintiff's possible mental illness would be as inadmissible in a courtroom situation as if they were lay witnesses. Viewing it in that light, there is no legally sufficient evidence in the record to negate Dr. Barenberg's conclusion of the absence of mental disorder.

However, rather than ruling the contradictory evidence out, he might have viewed it as less probative than other evidence. In *Gentile, supra,* that claimant's family doctor reported that claimant suffered from "moderately severe to severe depression," similar to Dr. Butler's diagnosis of severe anxiety

neurosis here. The only psychiatrist that examined the claimant reported, as Dr. Barenberg did here, that the claimant was not impaired nor in need of psychiatric treatment. The Third Circuit expressly affirmed the District Court's finding that the evidence of mental disorder, in light of contradictory evidence by a psychiatric doctor, was "inconsequential." 423 F.2d at 246. This may also be the analysis used by the ALJ here. The psychiatrist's testimony as the only qualified expert opinion on this aspect, must be given deciding weight over the doctors' analysis of plaintiff's mental condition.

Finally, in weighing the testimony, the ALJ obviously concluded that plaintiff had not met his burden. In *Baith, supra,* plaintiff claimed an anxiety condition in addition to his physical impairments. There was a record of his consultation with a psychiatrist, but no report was submitted. His personal physician diagnosed his problem as anxiety neurosis and noted that plaintiff was receiving medication. Judge Luongo concluded that plaintiff had not carried his burden of establishing that this anxiety was acute enough to be disabling. As in *Baith,* this Court holds that the ALJ's finding of no "significant" mental disability is supported by the substantial evidence.

Third, plaintiff contends that the agency decision had no reasonable basis in law. This Court does not agree, since the government met its burden, while the plaintiff did not. Having found no significant impairment, there could be no "disability." However, even if the ALJ had found a significant physical problem, plaintiff would still not be entitled to benefits if he could still work. Plaintiff is not "disabled" if he is still able to do any type of work. Once plaintiff shows he is no longer able to perform his former job, which is shown here as to the steel job, the burden switches to the government, which must show alternative work possibilities in order to prevail. *Farmer v. Weinberger, supra.* In *Farmer,* this burden was met by the testimony of the vocational expert, who opined that plaintiff was capable of maintaining a light

or sedentary job. This testimony then switched the burden back to plaintiff, who could not show a complete inability to do any work.

Here, the government met its burden through the testimony of Dr. Spergel. Plaintiff then failed to show additional disability, such as mental disorder, which might disable him from all types of lighter work. Therefore, this Court finds that the ALJ's decision has a reasonable basis in law.

■ Since this decision was in accord with the proper legal standards, has a reasonable basis in law and is supported by substantial evidence it cannot be overturned on review by this Court. Plaintiff, however, alludes in his brief to one other argument which must be considered. Plaintiff was not represented by counsel at the hearing before the ALJ. He was made aware of his right to counsel in the notice of hearing (Tr. 20) and at the hearing itself (Tr. 25) where he waived it. The Third Circuit has stated, "In the absence of a showing of clear prejudice or unfairness at the agency level proceedings, the lack of counsel is not a sufficient cause for remand." *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969). In *Hess v. Secretary of H. E. W.*, 497 F.2d 837 (3d Cir. 1974) the Third Circuit did remand because of lack of counsel. There, the plaintiff's ailments were "puzzling" and no recent medical reports were submitted. The Court placed responsibility on the hearing officer to request further information if the record was not clear. In this case the ALJ fully inquired into plaintiff's case and requested a more recent report from Dr. Butler, which he received and entered into the record after the hearing (T.R. 135). The record is quite clear. This Court believes that such efforts on behalf of plaintiff by the ALJ eliminated any slight prejudice which might have been caused by lack of counsel.