**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-2461

———————

DANIEL C. KUSHNER,

Appellant

v.

COMMISSIONER SOCIAL SECURITY

———————

On Appeal from the United States District Court for the
Western District of Pennsylvania
(District Court No.: 2-17-cv-00329)
District Judge: Honorable Donetta W. Ambrose

———————

Submitted under Third Circuit LAR 34.1(a)
on February 6, 2019

(Opinion filed: March 21, 2019)

Before: HARDIMAN, SCIRICA and RENDELL, Circuit Judges

O P I N I O N*

**RENDELL**, Circuit Judge:

Daniel Kushner challenges the Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). We conclude that the Commissioner's decision was supported by substantial evidence, and we will affirm the District Court's order that granted summary judgment for the Commissioner.

I

A

To be eligible for DIB, a claimant must show that he is unable to "engage in any substantial gainful activity" because of a medical disability. 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-part sequential test for determining whether a claimant is disabled under the statute. 20 C.F.R. § 404.1520(a)(4); *see also Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431–32 (3d Cir. 1999). The claimant bears the burden of establishing steps one through four—that he is not currently engaged in substantial gainful activity (step one), has a severe impairment (steps two and three), and does not have the "residual functional capacity" to return to past relevant work (step

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

four).  *See* 20 C.F.R. § 404.1520(a)(4)(i) – (iv).  If the claimant carries his burden, then the burden shifts to the Commissioner to establish step five—that the claimant can engage in other gainful employment.  *See id.* § 404.1520(a)(4)(v).  The claimant must also show that he was fully insured at the time of the disability.  42 U.S.C. § 423(a), (c).

B

Kushner filed his application for DIB in May 2014.  He alleged that he became disabled on August 1, 2003 as a result of a neck injury he sustained in a car accident in October 2000.  He claimed that his symptoms from the car accident increased in intensity over time, and included muscle fatigue, atrophy, carpal tunnel syndrome in his right arm, and headaches that worsened over time.  Kushner's last date insured was June 30, 2006, so he must show that he met the criteria for DIB between August 1, 2003 and June 30, 2006.  When he filed his application for DIB, Kushner also applied for Supplemental Security Income ("SSI").  *See* Tr. 149-52.  SSI is considered without regard to a claimant's date last insured, so the Commissioner was free to consider more recent medical information.  Kushner's SSI application was accepted based on his 2014 diagnosis of paranoid schizophrenia.[1]  *See* Tr. 375-76.  Kushner's SSI application is not at issue in this appeal.

After his initial DIB claim was denied, *see* Tr. 88, Kushner requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held the hearing, *see* Tr. 26-69, and

---

[1] As we discuss below, Kushner argues that the symptoms he experienced in 2003 through 2006 were, in fact, the early stages of his paranoid schizophrenia, not a result of the physical injuries he sustained in his 2000 car accident.

3

subsequently denied Kushner's claim. *See* Tr. 13-25. The ALJ made favorable determinations for Kushner on steps one and two: he found that Kushner was not employed during the relevant period and that he had several severe impairments.[2] *See* Tr. 15-16. But at step three, the ALJ found that these impairments were not equal in severity to the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. That finding sent him to steps four and five to determine whether Kushner maintained the residual functional capacity to engage in his past relevant work or other occupations in the national economy.

In analyzing Kushner's residual functional capacity, the ALJ stated that while his injuries could "reasonably be expected to cause the alleged symptoms … [,] his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible …." Tr. 17. He noted several findings that supported this conclusion: Kushner did not go to the emergency room after his accident, he was able to work as a painter after the accident, he was able to do "medium exertional jobs" a year after the accident, and he was working nearly three years after the accident. Tr. 17. The ALJ also relied on records or testimony from several medical professionals. The doctor who treated Kushner following his car accident, Dr. Randy Schemer, had recommended only "chiropractic treatment, moist heat, Advil and massage" for his symptoms. Tr. 17. Dr. Paul Hoover, who saw Kushner throughout 2003, "never told the claimant he was unable

---

[2] "[During the relevant period,] the claimant had the following sever impairments: Cervical Degenerative Disc Disease, Cervical Spondylosis, Cervical Radiculopathy/Neuritis, Right Wrist Carpal Tunnel Syndrome." Tr. 15.

to work." Tr. 18. The ALJ gave "great weight" to Dr. Hoover's opinion, which "stopped short of advancing a disability opinion." Tr. 19. He also relied on the records or testimony of a State agency psychologist, Dr. Ray Milke, Kushner's chiropractor, Dr. Paul Caton, and his primary care physician, Dr. Jeffrey Hein. *See* Tr. 18-19.

Given Kushner's residual functioning capacity, the ALJ determined that he was unable to perform past relevant work as a Construction Laborer, which required medium to heavy exertion. *See* Tr. 19. But he could perform other jobs in the national economy requiring light exertion. For this analysis, the ALJ relied on testimony from a vocational expert, Dr. William Reed. Dr. Reed testified that, given all the relevant factors, Kushner would have been able to engage in several other occupations, including as a Photo Machine Operator, Sales Attendant, and Storage Facility Rental Clerk. *See* Tr. 20. Furthermore, the ALJ addressed a hypothetical scenario in which Kushner had "no use of the right arm." Tr. 20 n. 1. Even in this were the case, he concluded that Kushner could still find work as an Usher, a Gate Guard, or a Page. *See id*. Therefore, the ALJ concluded that Kushner was not disabled at step five of the analysis.

Kushner sought review from the Appeals Council of the ALJ's determination. The Appeals Council denied his petition for review. *See* Tr. 1-4.

Having exhausted his administrative remedies, Kushner challenged his denial of benefits in the U.S. District Court for the Western District of Pennsylvania. The District Court held that the ALJ's decision was supported by substantial evidence, and granted summary judgment for the Commissioner. *See* App. A, at 1-5.

This appeal followed.

## II

The District Court had jurisdiction under 42 U.S.C. § 405(g) and 1383(c)(3).  We have appellate jurisdiction under 28 U.S.C. § 1291.  We review the Commissioner's legal conclusions *de novo*.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  And we review the Commissioner's factual finding for "substantial evidence."  42 U.S.C. § 405(g).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Chandler*, 667 F.3d at 359 (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).  Under substantial evidence review, we "are not permitted to re-weigh the evidence or impose [our] own factual determinations."  *Chandler*, 667 F.3d at 359.

## III

Kushner brings two claims on appeal: *first*, he urges that the ALJ's decision to deny his application for DIB was not supported by substantial evidence; and *second*, he argues that the ALJ erred by not calling a medical expert to testify.

6

A

Kushner's core claim is that the ALJ's decision was not supported by substantial evidence. He argues that the ALJ failed to consider that his headaches were "directly linked to the onset of his mental impairment of schizophrenia psychosis." Br. 6. Instead of considering the headaches "as a mental impairment," the ALJ concluded that they were "part of the cervical degenerative disc disease." Br. 9. The ALJ made this determination, Kushner argues, without "cit[ing] any specific evidence of record or medical finding …." *Id.*. Kushner contends that if his headaches were properly evaluated then he would have been classified as "sedentary," and thus would have been entitled to DIB. Br. 6-7.

Contrary to Kushner's claims, we hold that the ALJ's decision was supported by substantial evidence. To begin, there is no evidence in the administrative record that Kushner's headaches were early symptoms of his schizophrenia that was diagnosed in 2014. As the Commissioner notes in his brief, Kushner failed to raise this argument in the administrative proceedings. Br. 10. This is important because the burden rests squarely on the claimant to establish a severe impairment. *See Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant …."). If Kushner wished to argue that he was impaired due to schizophrenia in 2003-2006, he needed to have proffered some evidence of this in his administrative proceedings. We cannot fault the ALJ for not accepting an argument that Kushner did not advance.

In contrast to the lack of evidence supporting Kushner's theory regarding schizophrenia, the record supports the ALJ's finding that Kushner's headaches resulted from

7

the 2000 car accident. As we discussed, *supra* Section I. B., the ALJ relied on a wealth of medical evidence to reach his conclusion. He relied upon the records of several medical professionals, including Dr. Schemer, who treated Kushner following his car accident, Dr. Hoover, who treated him through the date of his alleged disability, Dr. Caton, his chiropractor, and Dr. Hein, his primary care physician. Furthermore, the state agency psychological consultant, Dr. Milke, concluded that Kushner did not have any mental impairments as of his date last insured. And the vocational expert, Dr. Reed, testified as to Kushner's ability to perform several jobs in the national economy. Far from reaching his conclusion by "mischaracterize[ing] the evidence," Kushner Br. 9, the ALJ's decision was grounded in the detailed collection of medical evidence in the record.

Even if Kushner could show a connection between the headaches and his later mental disability, he would still need to show that the headaches were disabling no later than June 30, 2006. Merely showing that those symptoms were related to a later disability is not enough. As the ALJ concluded, Kushner's headaches did not preclude him from engaging in several other occupations in the national economy. Therefore, they did not constitute a disability during the relevant period.

B

Finally, the ALJ was not obligated to call a medical expert. Kushner argues that under *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003) and Social Security Ruling (SSR) 83-20, 1983 WL 31249[3], the ALJ was required to call on a medical expert. These decisions, as well as our decision in *Walton v. Halter*, 243 F.3d 703 (3d Cir. 2001), establish that an "ALJ must call upon the services of a medical advisor in a situation where the alleged impairment was a slowly progressing one, the alleged onset date was far in the past, and *adequate medical records for the most relevant period were not available.*" *Newell*, 347 F.3d at 549 n. 7 (emphasis added). Here, however, a wealth of medical records from the relevant period were available and included in the record. *See, e.g.,* Tr. 227-230 (Medical Report from Paul Hoover, MD); Tr. 231-298 (Office Treatment Records from Canton Chiropractic); Tr. 561-581 (Office Treatment Records from Baden Area Health Care). Accordingly, our precedents did not compel the Commissioner to seek out a medical expert in this case.

IV

The Commissioner's decision to deny DIB to Kushner was supported by substantial evidence. The judgment of the District Court is **AFFIRMED.**

---

[3] SSR 83-20 has since been rescinded and replaced by SSR 18-01p. The new SSR became effective on October 2, 2018, after the District Court's decision. Even if this new SSR were to apply, however, it would not help Kushner. SSR 18-01p gives ALJs complete discretion over the calling of medical experts. *See* SSR 18-01p, 2018 WL 4945639, at *6 ("The decision to call on the services of a[] [medical expert] is always at the ALJ's discretion.").