PAPPERT, District Judge.
Musa Saeed Muhammad seeks judicial review of the Commissioner of Social Security's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Muhammad contends, among other things, that the Administrative Law Judge who presided over his hearing lacked the authority to decide his case because she was not appointed in the manner prescribed by the Constitution's Appointments Clause. The Commissioner acknowledges the infirmity of the appointment but contends that Muhammad forfeited his right to assert such a claim by not raising it before the ALJ or any point thereafter in the administrative process. Magistrate Judge Timothy Rice issued a Report and Recommendation ("R & R") in which he concluded that Muhammad had not forfeited his right to challenge the propriety of the ALJ's appointment.
Given that ruling, Judge Rice did not consider the merits of Muhammad's claims; he recommended instead that Muhammad's request for review be granted and the case be remanded to be heard de novo by a new ALJ. (ECF No. 25.) Upon consideration of the Administrative Record,[1] Judge Rice's R & R, the parties' Objections and Responses thereto (ECF Nos. 29 & 35), the Court sustains the *464 Commissioner's objections, overrules the R & R and refers the case back to Judge Rice to address the merits of Muhammad's claims.[2]
I
Muhammad filed for DIB on January 14, 2014. (Administrative Record ("R.") 91.) His application was initially denied on June 12, 2014. (Id. at 91-102.) Muhammad timely requested a hearing before an ALJ, which was held on April 21, 2016. (Id. at 46-87, 113.) ALJ Susannah Merritt ruled on June 29, 2016 that Muhammad was not disabled. (Id. at 7-25.) In denying his claim, ALJ Merritt found that Muhammad was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 25.) Muhammad requested review of ALJ Merritt's decision by the Appeals Council on July 13, 2016. (Id. at 166-69.) On July 31, 2017, the Appeals Council denied his request. (Id. at 1-6.) Muhammad was represented by counsel throughout the administrative process.[3]
On January 17, 2018, Muhammad filed this lawsuit. See (Compl., ECF No. 3). He submitted a brief and statement of issues on June 21, 2018 arguing, among other things, that he proved his inability to return to past work, that the ALJ failed to find his traumatic brain injury severe and overestimated his residual functional capacity and that the ALJ erroneously assigned insignificant weight to the opinion of the treating psychiatrist. (Br. & Stmt. Issues, ECF No. 10.) On July 25, 2018, the Court referred the matter to Judge Rice for an R & R. (ECF No. 12.) On August 13, 2018, almost two and a half years after his hearing before the ALJ, Muhammad filed his reply brief in which he challenged for the first time the constitutionality of ALJ Merritt's appointment. (Reply Br. at 1, ECF No. 15.)
Roughly two months before Muhammad asserted his constitutional challenge, the Supreme Court held in Lucia v. SEC , --- U.S. ----, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018), that the Securities and Exchange Commission's ALJs are "Officers of the United States" within the meaning of the Constitution's Appointments Clause, which states:
[The President]...shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.
Id. at 2051 ; U.S. CONST. , art. II, § 2, cl. 2. Because the ALJ in Lucia had been appointed by SEC staff members, the Court ruled that his appointment was unconstitutional. 138 S.Ct. at 2055. The Court limited relief, however, to those who make " 'a timely challenge to the constitutional validity of the appointment of an officer who *465 adjudicates his case.' " Id. (quoting Ryder v. United States , 515 U.S. 177, 182-83, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995) ). It held that the petitioner had timely "contested the validity of [the ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." Id. As a result, the Court cured the constitutional error by instructing a different ALJ or the Commission itself to hold a new hearing for the petitioner. Id.
II
Judge Rice recommends that Muhammad's request for review be granted because: (1) although Muhammad's Appointments Clause challenge is nonjurisdictional, it "merits consideration...because it impacts the validity of the underlying proceeding"; (2) Muhammad was not required under Sims v. Apfel , 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), to preserve his Appointments Clause challenge by raising it at the initial administrative level of review; (3) even if he was required to preserve the issue, Muhammad was excused from doing so under Freytag v. Commissioner , 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), and (4) it would have been futile for Muhammad to raise his claim before an ALJ who was "powerless to resolve it." (R & R at 2-12.) The Commissioner does not contest that SSA ALJs are "inferior officers" who, under the Appointments Clause must be appointed by the President, the Courts or Heads of Departments. (Obj. at 4 n.2, ECF No. 29); see U.S. CONST., art. II, § 2, cl. 2. Rather, the Commissioner contends that Muhammad forfeited his Appointments Clause challenge by failing to raise it at any stage of the administrative process and that Freytag does not "categorically exclud[e such challenges] from general waiver and forfeiture principles." (Obj. at 4-5, 12.)
At the time of the Magistrate Judge's decision in November of 2018, nearly every district court to address this issue in the context of the SSA held that the claimant forfeited his right to challenge the constitutionality of the ALJ's appointment by failing to timely assert such a challenge before the ALJ. See Abbington v. Berryhill , No. CV 1:17-00552, 2018 WL 6571208, at *2 n.7 (S.D. Ala. Dec. 13, 2018) (collecting cases as of December 13, 2018); Fortin v. Comm'r of Soc. Sec. , No. 18-10187, 372 F.Supp.3d 558, 566-68, 2019 WL 1417161, at *6 (E.D. Mich. Mar. 29, 2019) (collecting cases as of March 29, 2019). Some courts have since followed Judge Rice's approach while others have not. Compare Bizarre v. Berryhill , 364 F. Supp. 3d 418, 424 n. 4 (M.D. Pa. 2019), and Culclasure v. Comm'r of Soc. Sec. Admin ., No. CV 18-1543, 375 F.Supp.3d 559, 573-74, 2019 WL 1641192, at *11 (E.D. Pa. Apr. 16, 2019), with Fortin , 372 F.Supp.3d at 565-66, 2019 WL 1417161, at *5, and Bonilla-Bukhari v. Berryhill , 357 F.Supp.3d 341, 350 (S.D.N.Y. 2019).
A
As a threshold matter, the R & R found that Muhammad's Appointments Clause challenge is nonjurisdictional. (R & R at 2.) While a jurisdictional challenge cannot be waived or forfeited, a nonjurisdictional challenge can be. Diane S. P. v. Berryhill , No. 4:17CV143, 379 F.Supp.3d 498, 517-18, 2019 WL 1879256, at *13 (E.D. Va. Mar. 21, 2019). The Supreme Court and several appellate courts have analyzed Appointments Clause challenges as nonjurisdictional. See Freytag , 501 U.S. at 871-72, 111 S.Ct. 2631 (including Appointments Clause objections to judicial officers in the category of "nonjurisdictional structural constitutional objections"); see *466 also N.L.R.B. v. RELCO Locomotives, Inc. , 734 F.3d 764, 795 (8th Cir. 2013) (declining "to depart from Freytag's general rule that [A]ppointments [C]lause challenges are nonjurisdictional"); GGNSC Springfield v. N.L.R.B. , 721 F.3d 403, 405-07 (6th Cir. 2013) (holding errors regarding appointment of officers under Article II are nonjurisdictional). The Court accordingly treats Muhammad's challenge as nonjurisdictional and therefore subject to forfeiture.[4]
A general administrative law principle is that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." United States v. L.A. Tucker Truck Lines, Inc. , 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has an opportunity for correction in order to raise issues reviewable by the courts." Id. The R & R acknowledges that Muhammad did not raise his Appointments Clause challenge with the ALJ or at any point in the administrative process and relies on Sims in declining to "judicially impose" an issue exhaustion requirement. (R & R at 3, 9.)
The issue in Sims was whether an unsuccessful Social Security claimant waived any issues in a later judicial proceeding that he did not present in his request for review to the Social Security Appeals Council. 530 U.S. at 105, 120 S.Ct. 2080. Finding the "requirements of administrative issue exhaustion are largely creatures of statute," the Supreme Court concluded that no statute or regulation within the SSA required issue exhaustion. Id. at 107-08, 120 S.Ct. 2080. It noted that it had previously "imposed an issue-exhaustion requirement even in the absence of a statute or regulation[ ] [b]ut the reason we have done so does not apply here." Id. at 108, 120 S.Ct. 2080. In relying upon the "inquisitorial" nature of the SSA, the Court focused its analysis on the "informal, nonadversary manner" of the Appeals Council review process and its corresponding regulations. Id. at 111, 120 S.Ct. 2080. Ultimately, it held that "[Social Security claimants] who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Id.
The Supreme Court's reasoning in Sims is less applicable to this case than the R & R presumes. The extent to which Sims dictates the Magistrate Judge's conclusion depends in large part on a fundamental assumption-that if a claimant was not required to raise an issue before the Appeals Council, then he must not have to raise that issue before the ALJ. Sims , however, specifically cautions against making just that assumption. The Court did not, though it could have, state that Social Security claimants must exhaust all issues before ALJs as well as before the Appeals Council. Sims expressly left open the question of issue exhaustion before ALJs, stating that "[w]hether a claimant must exhaust issues before the ALJ is not before us." Id. at 107, 120 S.Ct. 2080 ; see id="p467" href="#p467" data-label="467" data-citation-index="1" class="page-label">*467id. at 117, 120 S.Ct. 2080 ("Yet I assume the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ.") (Breyer, J., dissenting). The Court could just have easily stated that its reasoning also applies to ALJs or it could have remained silent on that point. By making clear that its reasoning and holding did not necessarily pertain to issue exhaustion before the ALJs, Sims signaled that different concerns and analyses may apply to exhaustion requirements at the ALJ level.
Second, the Court based much of its analysis on the nature of the proceeding, namely whether it is adversarial or inquisitorial. See id. at 109-11, 120 S.Ct. 2080. The Court acknowledged that the general rule requiring issue exhaustion which prevents litigants from being "surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence," id. at 109, 120 S.Ct. 2080 (citing Hormel v. Helvering , 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941) ), carries more weight in an adversarial proceeding-or the "degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding," id. The Court outlined a sliding scale of sorts, with the rationale for requiring issue exhaustion at its greatest in an adversarial administrative proceeding and weakest when that proceeding is not adversarial. Id. at 110, 120 S.Ct. 2080. The Court viewed administrative agency proceedings, particularly those in the Social Security context, to be inquisitorial rather than adversarial, citing the ALJs' "duty to investigate the facts and develop the arguments both for and against granting benefits," with the Appeals Council's review similarly broad. Id. at 111. Sims involved exactly the type of evidentiary issues which arise in such an investigative or inquisitorial context-whether the ALJ had made selective use of the record, posed the appropriate questions to the vocational expert or failed to order a consultative examination in light of "certain peculiarities in the medical evidence." Id. at 105-06, 120 S.Ct. 2080. Given these issues, the rationale for requiring issue exhaustion was at its weakest.
This case is far different. In his Appointments Clause challenge, Muhammad isn't quibbling over whether the ALJ properly developed the record, gave too much or too little weight to a medical opinion or otherwise erred in applying the law to the specific facts of his case. His challenge is purely legal-that the ALJ who decided against him had no authority to do so because her very appointment to the position was unconstitutional. That attack on the "structural integrity of the process itself," Fortin , 372 F.Supp.3d at 564-65, 2019 WL 1417161, at *4, is as adversarial as it gets and under the sliding scale discussed in Sims presents the strongest case for requiring issue exhaustion. See Diane S.P. , 379 F.Supp.3d at 505, 2019 WL 1879256, at *2 ("Plaintiff's arguments focusing on the non-adversarial nature of Social Security proceedings are undercut in large part by the fact that a challenge to the ALJ's capacity, at least in the form at issue here, is a matter that the ALJ has no occasion to identify as part of his or her role investigating the merits-facts.") (emphasis omitted).
Third, the regulations for requesting review by the Appeals Council differ from those governing concerns to be raised with an ALJ, perhaps helping to explain why Sims took care to exempt from its analysis issue exhaustion before ALJs. The Court noted that the Appeals Council's review is "plenary," unless otherwise stated, see 20 C.F.R. § 404.967(a), and involves evaluation of the "entire record," see 20 C.F.R. § 404.970(b), in deciding whether to grant review.
*468 Sims , 530 U.S. at 111, 120 S.Ct. 2080. Importantly, if claimants seek Appeals Council review or the Appeals Council chooses to review the decision on its own, the Council will consider the entirety of the ALJ's decision. Id. The Court also found that a form used in requesting Appeals Council review contained "only three lines for the request for review...strongly suggest[ing] that the Council did not depend much, if at all, on claimants to identify issues for review." Id. at 111-12, 120 S.Ct. 2080.
Unlike the Appeals Council review process, an ALJ will only hold a hearing if a request is made. See 20 C.F.R. § 404.930(b). The claimant must state the reasons he disagrees with the previous determination or decision. See id. § 404.933(a)(2). Whereas the Appeals Council has plenary review, generally the issues before the ALJ include those "brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor." Id. § 404.946(a); see also Abbington , 2018 WL 6571208, at *5. Moreover, the ALJ or any party may also raise new issues, even if they "arose after the request for a hearing and even though [they have] not been considered in an initial or reconsidered determination." Id. § 404.946(b). Further, the regulations allow for disqualification of the ALJ assigned to a claimant's case, requiring the claimant to object "at [his] earliest opportunity." 20 C.F.R. § 404.940.[5] The ALJ must then decide whether to proceed with the hearing or withdraw. Id. If he does not withdraw, the regulations authorize a claimant to "present [his] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge." Id.
Here, following the denial of his claim for DIB, Muhammad requested a hearing before an ALJ and listed the reasons why he disagreed with the prior determination. (R. 113). ALJ Merritt subsequently notified Muhammad of his hearing date and identified the issues to be considered at the hearing. (R. 124-149); see 20 C.F.R. § 404.938(b)(1). Muhammad could have objected to anything about the ALJ herself or her identification of the issues, to which she could have addressed his objections either in writing or at the hearing itself. Id. § 404.939; see also id. § 404.946(b)(1).
B
Even if Muhammad was required to preserve his Appointments Clause challenge, the R & R concludes that he was excused from doing so under Freytag . (R & R at 7-8.) There, the petitioners challenged a tax deficiency ruling issued by a Special Trial Judge in the United States *469 Tax Court. Freytag , 501 U.S. at 871, 111 S.Ct. 2631. The Chief Judge of the Tax Court appointed the Special Trial Judge after the original judge retired due to illness. Id. The petitioners consented to the assignment and did not raise their constitutional challenge until their appeal to the Fifth Circuit. Id. at 871-72, 111 S.Ct. 2631. Noting that the challenge was "neither frivolous nor disingenuous," the Supreme Court held that Freytag was "one of those rare cases" in which the Court should exercise its discretion to hear a non-exhausted constitutional argument. Id. at 879, 111 S.Ct. 2631 (citing Glidden Co. v. Zdanok , 370 U.S. 530, 535-536, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) ). In so ruling, the majority did not create a categorical exception to the exhaustion requirement for Appointments Clause challenges. See id. at 892, 111 S.Ct. 2631 ;[6] see also In re DBC , 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("The Supreme Court has never indicated that [Appointments Clause] challenges must be heard regardless of waiver.") (citing Freytag , 501 U.S. at 893, 111 S.Ct. 2631 ).
Since Freytag , the Supreme Court has not clarified the types of "rare cases" that are excused from the failure to raise a claim before an agency, though the Court long before Lucia imposed a timeliness requirement for Appointments Clause challenges. In Ryder , the Court held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." 515 U.S. at 182-83, 115 S.Ct. 2031 (emphasis added). The Court explained that "[a]ny other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." Id. at 183, 115 S.Ct. 2031. Lucia expressly reaffirmed this requirement. See Lucia , 138 S.Ct. at 2055 (citing Ryder , 515 U.S. at 182-183, 115 S.Ct. 2031 ).
Nothing about Muhammad's case warrants excusing his failure to timely raise the Appointments Clause challenge before the ALJ and throughout the administrative process. While Muhammad's challenge is neither "frivolous nor disingenuous," see Freytag , 501 U.S. at 900, 111 S.Ct. 2631, there is nothing rare about his case. "[R]egularly excusing forfeiture of Appointments Clause challenges under Freytag risks eroding the rule in Ryder , decided nearly four years after Freytag and recently reaffirmed in Lucia , that an Appointments Clause challenge must be 'timely' to afford the challenger relief." Abbington , 2018 WL 6571208, at *7. Applying Freytag 's rare case exception here would disincentivize petitioners, particularly those like Muhammad who are represented by counsel, from raising Appointments Clause challenges at the administrative level. Indeed, regularly permitting unsuccessful claimants to raise such challenges for the first time on judicial review would "encourage the practice *470 of 'sandbagging': suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later-if the outcome is unfavorable-claiming that the course followed was reversible error." See id. at *7 (citing Freytag , 501 U.S. at 895, 111 S.Ct. 2631 ) (Scalia, J., concurring in part and concurring in the judgment).
The R & R reasons that this concern is not applicable here because Muhammad raised the issue at the "earliest opportunity"-in his August 13, 2018 reply brief, almost two months after Lucia came down. (R & R at 8.) The Magistrate Judge believed that Muhammad's Appointments Clause challenge (which is labeled a " Lucia " claim in the R & R, see (R & R at 2)) was "unforeseeable" prior to Lucia because before that decision DOJ contended that ALJs were mere employees, not inferior officers under the Appointments Clause. (Id. at 6.) According to the R & R, DOJ's pre- Lucia "shifting position" regarding the ALJs' status prevented claimants like Muhammad from realizing that they could challenge the constitutionality of a governmental agency official's appointment. (Id. at 8.) That is obviously not the case-the Supreme Court did not for the first time invent the right to bring such challenges with Lucia , see, e.g ., Freytag , 501 U.S. at 892, 111 S.Ct. 2631 ; Ryder , 515 U.S. at 188, 115 S.Ct. 2031 ; Free Enter. Fund v. Pub. Co. Accounting Oversight Bd ., 561 U.S. 477, 513, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010), and whatever DOJ's "shifting" litigation strategies may have been are not relevant to the inquiry. To be sure, Lucia may have shown that such challenges (provided they are timely brought) could succeed; but as Freytag and Ryder show, that was not a novel concept.[7]
C
Nor should Muhammad's failure to assert his constitutional challenge before the ALJ or at any point in the administrative process be excused because it would have been futile to do so. (R & R at 11-12.) The R & R states that an SSA ALJ is "powerless" to "resolve" or "decide" constitutional issues like Muhammad's Appointments Clause challenge. (Id. at 11.) The only support given for this point is a January 30, 2018 SSA Emergency Message that instructed ALJs to state that they "do not have the authority to rule on [an Appointments Clause challenge]." Soc. Sec. Admin., EM-18003 REV, effective Jan. 30, 2018 and revised June 25, 2018.[8] Muhammad's hearing before the ALJ was held on April 21, 2016, the ALJ found that Muhammad was not disabled on June 29, 2016, the Appeals Council denied his request for review on July 31, 2017 and Muhammad filed this lawsuit on January 17, 2018. "The fact that ALJs were directed at some later time to not address the *471 same argument [the petitioner] has now raised has no bearing on the ALJ's or the Commissioner's ability to address [the petitioner's] Appointment Clause challenge." Bennett v. Berryhill , No. 2:17CV520, 2019 WL 1104186, at *11 (E.D. Va. Feb. 15, 2019), report and recommendation adopted , No. 2:17-CV-520, 2019 WL 1102203 (E.D. Va. Mar. 8, 2019).
Even if the Emergency Messages were relevant here, the R & R's futility analysis is incorrect. In other contexts, the Third Circuit has found exhaustion to be futile where "the administrative process cannot provide [a petitioner] with any form of the relief he seeks." Nyhuis v. Reno , 204 F.3d 65, 66 (3d Cir. 2000). The issue is not whether the ALJ could resolve or decide an issue of constitutional law, but instead whether the SSA, alerted to the problem by Muhammad's timely objection, could have corrected any error in the ALJ's appointment or assigned a different ALJ to preside over Muhammad's hearing.
There seems to be little dispute that this could have been done. All the Commissioner needed to do was to appoint or reappoint the ALJs herself, given that "inferior officers" such as the ALJs can be appointed by the "Heads of Departments." See U.S. CONST. , art. II, § 2, cl. 2. This is in fact precisely what the head of the SSA eventually did. See Emergency Message, EM-18003 REV 2, effective Aug. 6, 2018 ("On July 16, 2018, the Acting Commissioner ratified the appointment of ALJs and AAJs and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims.").[9]
In sum, long held administrative law principles preclude the summary conclusion on the facts of this case that nothing could have been done if Muhammad raised his constitutional concerns in the administrative process, beginning with the ALJ. Exhaustion protects "administrative agency authority" by giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" Woodford v. Ngo , 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (citing McCarthy v. Madigan , 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ); see also Wilson v. MVM, Inc. , 475 F.3d 166, 173 (3d Cir. 2007) ("[E]xhaustion of administrative remedies serves to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record.") (internal quotation marks and alterations omitted). Muhammad never gave the ALJ or the SSA that opportunity.
REPORT AND RECOMMENDATION
TIMOTHY R. RICE, U.S. MAGISTRATE JUDGE
The notion that claims of legal error must be preserved at trial for appellate *472 review is a bedrock tenet of our legal system. See, e.g., Judiciary Act § 25, 1 Stat. 86 ("no other error shall be assigned or regarded as a ground of reversal ... than such as appears on the face of the record"); Crowell v. Randell, 35 U.S. 368, 391, 10 Pet. 368, 9 L.Ed. 458 (1836) (if it does not appear on the record that an issue has been raised and decided in the lower court, "appellate jurisdiction fails"). Not only does it afford the presiding jurist an opportunity to prevent error, it arms a reviewing court with a full evidentiary and legal record to resolve appellate challenges. See Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941) (calling it "essential" for litigants to have an opportunity to offer all relevant evidence at the trial level); see also Fed. R. Evid. 103(a), Adv. Comm. Notes (discussing the requirements for claiming legal error with respect to an admission or exclusion of evidence). The justification for a timely challenge loses force, however, when raising such a claim would be futile and not achieve the intended goal of getting things right in the first place.
This case presents such a dilemma.
Petitioner Musa Saeed Muhammad for the first time contends the presiding administrative law judge ("ALJ") was improperly appointed and therefore lacked legal authority to decide his case. See Pl. Reply (doc. 15) at 1 (citing Lucia v. S.E.C., --- U.S. ----, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) (holding ALJs employed by the Securities and Exchange Commission ("SEC") were inferior officers subject to appointment pursuant to the Appointments Clause of the United States Constitution)). He concedes he failed to preserve his claim for error before the ALJ, which has prompted the Commissioner to seek summary denial of the Lucia claim because it was not timely raised. See Def. Resp. (doc. 19) at 2 (citing Lucia, 138 S.Ct. at 2045 ("one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief") (internal quotation marks and citation omitted)).
Nearly every court to address the issue in the context of the Social Security Administration ("SSA") has summarily denied the claim without analysis, citing a claimant's forfeiture by failing to first raise the claim before the ALJ. See, e.g., Garrison v. Berryhill, 1:17-CV-00302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) ; Iwan v. Comm'r of Soc. Sec., No. 17-CV-97, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ; Holcomb v. Berryhill, No. 17-1341, 2018 WL 3201869, at *3 n.3 (C.D. Cal. June 21, 2018).
I disagree. Although Muhammad's Appointments Clause objection is nonjurisdictional, his claim merits consideration even when not raised below because it impacts the validity of the underlying proceeding. Further, Muhammad raised his objection at the earliest possible opportunity after Lucia was decided, and was not required to preserve his Lucia claim by raising it at the initial administrative level of review. In any event, it would have been futile for Muhammad to raise his claim before the ALJ because the ALJ was powerless to resolve it.
I respectfully recommend remanding this case to a different, constitutionally appointed ALJ. Since the ALJ's decision was a nullity based on Lucia, I need not address the merits of his claims because a new ALJ must conduct a de novo review on remand.[1]
*473 I. Background
Muhammad filed for Disability Insurance Benefits ("DIB") on January 14, 2014, alleging a disability onset date of November 15, 2012. R. at 91. Following a hearing, ALJ Susannah Merritt denied Muhammad's claim in June 2016. Id. at 25. Applying the five-step sequential analysis, see 20 C.F.R. § 404.1520(2)(4)(i)-(v), the ALJ found Muhammad was not disabled, because he could perform jobs available in the national economy, R. at 24-25.
The Appeals Council denied Muhammad's request for review on July 31, 2017. Id. at 1-6. Muhammad filed this case on January 17, 2018. See Compl. (doc. 3). In Muhammad's reply brief, he challenged for the first time the constitutionality of ALJ Merritt's appointment pursuant to the Appointments Clause.[2] Pl. Reply at 1-2. The Commissioner subsequently responded and oral argument was held on October 16, 2018.[3] See Def. Resp.
II. The ALJ's Authority to Decide the Case
Muhammad argues ALJ Merritt's decision is invalid because she was not appointed in the manner prescribed by the Appointments Clause. Pl. Reply at 1-2.
Lucia
In 2012, an SEC ALJ found Lucia had violated certain securities laws. Lucia, 138 S. Ct. at 2049. On appeal to the SEC, Lucia argued the ALJ was not properly appointed under the Appointments Clause because the ALJ was appointed by SEC staff members rather than the SEC. Id.; see also U.S. Const., art. II, § 2, cl. 2 (inferior officers must be appointed by "the President," "Courts of Law," or "Heads of Departments"); Buckley v. Valeo, 424 U.S. 1, 126, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam ) (inferior officers are those individuals who "exercise significant authority pursuant to the laws of the United States").
After both the SEC and the United States Court of Appeals for the D.C. Circuit rejected his argument, Lucia, 138 S.Ct. at 2049, the Supreme Court reversed, holding that SEC ALJs are inferior officers subject to appointment pursuant to the Appointments Clause,ibr.US_Case_Law.Schema.Case_Body:v1">4 id. at 2055. The Court also held Lucia's argument was "timely" because it had been raised "before the Commission[ ] and ... in the Court of Appeals and [the Supreme] Court." Id. (internal quotation marks and citation omitted). The Court concluded Lucia was entitled to a new hearing before a different, constitutionally appointed ALJ. Id.
Although Lucia decided the constitutional status of only SEC ALJs, the decision implicated the status of ALJs in other agencies, including the more than 1,600 ALJs at the SSA. See *474 Br. of Nat'l Org. of Soc. Sec. Claimants' Reps., Lucia v. S.E.C.,138 S.Ct. 2044, (No. 17-130)(April 2, 2018), at *1-2; see also Bandimere v. S.E.C., 844 F.3d 1168, 1200 (10th Cir. 2016), cert. denied sub nom, --- U.S. ----, 138 S.Ct. 2706, 201 L.Ed.2d 1101 (2018) (McKay, J., dissenting) (stating there is no "meaningful difference between SEC ALJs and SSA ALJs under the majority's [decision]"). Unlike the SEC which features an adversarial system, however, SSA ALJs differ in significant respects.
Unique Nature of SSA Disability Claims Process
SSA ALJs oversee hearings to determine a claimant's eligibility for benefits. 42 U.S.C. § 405(b)(1). If the claimant receives an unfavorable decision from the ALJ, he may request review by the Appeals Council, 20 C.F.R. § 422.205(a), followed by review in United States District Court, 42 U.S.C. § 405(g).
Although all ALJs preside over hearings, "[t]he differences between courts and agencies are nowhere more pronounced than in [SSA] proceedings." Sims v. Apfel, 530 U.S. 103, 110, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). In other agencies, such as the SEC, litigants are required to present issues and arguments. See id. at 109-10, 120 S.Ct. 2080. In the Social Security context, however, the ALJ must investigate the facts and develop the record, considering "arguments both for and against granting benefits." Id. at 111, 120 S.Ct. 2080 (citation omitted); Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ("[The ALJ] acts as an examiner charged with developing the facts."); see also 20 C.F.R. § 404.944. This distinction renders hearings before SSA ALJs as "inquisitorial rather than adversarial." Sims, 530 U.S. at 110-11, 120 S.Ct. 2080 ; see also id. at 111-12, 120 S.Ct. 2080 (citing SSA regulations illustrating non-adversarial nature of proceedings); 20 C.F.R. § 404.900(b) ("In making a determination or decision in your case, we conduct the administrative review process in an informal, non-adversarial manner."). "Given that a large portion of [SSA] claimants ... have no representation," it makes good sense to employ such a model. Sims, 530 U.S. at 112, 120 S.Ct. 2080.
Until recently, SSA ALJs were appointed from a pool of applicants maintained by the Office of Personnel Management ("OPM"). See Menoken v. McGettigan, 273 F.Supp.3d 188, 192 (2017) ("OPM has exclusive control over the process used to refer applicants to be considered for ALJ positions."). Following Lucia, on July 10, 2018, the President signed an Executive Order directing that ALJs thereafter be hired by individual agencies, rather than from the OPM's central pool. Exec. Order No. 13,843, 83 Fed. Reg. 32755 (July 10, 2018). That Order changed the appointment process of ALJs prospectively, but did not affect the status of previously appointed ALJs. See id. However, "[o]n July 16, 2018, the Acting Commissioner ratified the appointment of ALJs ... in order to address any Appointments Clause questions involving SSA claims."[5] Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process-UPDATE (2/6/2018).
Before Lucia, and while Muhammad was litigating his claims, the Department of Justice ("DOJ") had argued that ALJs were mere employees, not inferior officers *475 subject to constitutional appointment.[6] See, e.g., Br. for Resp., Lucia v. S.E.C., 832 F.3d 277 (D.C. Cir. 2016) (No. 15-1345), 2017 WL 1196122, at *1 ("the [ALJs] employed by the [SEC] are employees of the Commission, not 'inferior Officers' "); see also N.T. 10/16/18 at 6-8. While litigating Lucia in the Supreme Court, however, the DOJ changed its position, conceding that ALJs were inferior officers. See Reply Br. for Resp. Supporting Pets., Lucia v. S.E.C., 138 S.Ct. 2044 (2018) (No. 17-130), 2018 WL 1806836, at *1 ; see also Memo. from the Sol. Gen. to Agency Gen. Counsels 3 ("[The DOJ] no longer plans to argue that such ALJs are employees rather than inferior officers.").
Application of Lucia to SSA Proceedings
The Commissioner concedes that SSA ALJs are inferior officers who must be appointed pursuant to the Appointments Clause. See Def. Resp. at 3 n.1 ("For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers."); N.T. 10/16/18 at 27. This point is underscored by the Solicitor General's memorandum to agency general counsels, which states "much of the reasoning of Lucia applies with equal force" to ALJs appointed under 5 U.S.C. § 3105, such as SSA ALJs.[7] Sol. Gen. Memo. 3.
That leaves only the timeliness of Muhammad's claim to be decided. Because the alleged defect in the appointment of SSA ALJs is an important issue that goes to the validity of SSA proceedings, it should be considered even if not properly preserved before the ALJ. See Freytag v. Comm'r, 501 U.S. 868, 879, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). In Freytag, the Supreme Court concluded it could consider a challenge to the appointment of Special Trial Judges of the United States Tax Court that had not been raised in the underlying proceedings. Id. Although the claim was nonjurisidictional, and thus forfeitable if not raised below, the Court found "Appointments Clause objections ... [are] structural constitutional objections that [can] be considered on appeal whether or not they were ruled upon below." Id. at 878-79, 111 S.Ct. 2631 (citing Glidden Co. v. Zdanok, 370 U.S. 530, 536, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) ); see also Schacht v. United States, 398 U.S. 58, 63-64, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970) (nonjurisdictional rules "can be relaxed by the Court in the exercise of its discretion when the ends of justice so require"). Citing the need to protect the "separation-of-powers concept embedded in the Appointments Clause," the Court chose to consider the claim, notwithstanding the petitioner's failure to raise it below. Id. The same concerns are implicated here.
Muhammad also raised his Appointments Clause objection at the "earliest possible opportunity" after Lucia was decided. See, e.g., 20 C.F.R. § 404.939 ; see supra at 473 n.3. Before Lucia, the shifting position of the DOJ regarding the status of ALJs made such a claim unforeseeable. Compare Br. for Resp., 2017 WL 1196122, at *1 (arguing ALJs are employees) with Reply Br. for Resp. Supporting Pets., 2018 WL 1806836, at *1 (conceding ALJs are inferior officers). This is particularly true because many SSA claimants are unrepresented by counsel and lack any understanding of how SSA ALJs are appointed, or why it makes any difference. See *476 Sims, 530 U.S. at 112, 120 S.Ct. 2080. After Lucia was decided on June 21, 2018, Muhammad asserted his Appointments Clause objection in his next filing for this case-his reply brief filed on August 13, 2018. See Pl. Reply at 1-2.
The few courts to address Appointments Clause challenges in the SSA context following Lucia have generally relied on the "timely challenge" requirement to summarily reject claimants' arguments. See, e.g., Garrison, 2018 WL 4924554, at *2 ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."); Iwan, 2018 WL 4295202, at *9 ("Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); Holcomb, 2018 WL 3201869, at *3 n.3 ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").[8] Such summary denials are unpersuasive.
Lucia solely concerned SEC proceedings, and the decisions applying Lucia to the SSA fail to engage in any substantive analysis of the issue in the unique context of Social Security disability appeals. The Commissioner concedes that fact. N.T. 10/16/18 at 29 (SSA attorney stating "I agree with you that [the cases applying Lucia to SSA ALJs] don't provide a lot of analysis in how they get there.").
In SEC proceedings, "[n]o objection to an order or rule of the [SEC] ... may be considered by [a reviewing] court unless it was urged before the [SEC] or there was reasonable ground for failure to do so." 15 U.S.C. § 78y(c). Although the Commissioner points to several SSA regulations which direct, inter alia, that issues must be raised at the earliest possible opportunity in the administrative proceedings, no SSA statute or regulation states that an issue is forfeited on judicial review if not raised at the administrative level. See Sims, 530 U.S. at 108, 120 S.Ct. 2080 ; see also 20 C.F.R. §§ 404.933(a)(2), 404.939, 404.940, 404.946(b), 416.1439, 416.1440.
Although courts also may judicially impose exhaustion requirements, "the reasons for a court to require issue exhaustion are much weaker" in the context of a non-adversarial administrative proceeding. Sims, 530 U.S. at 110, 120 S.Ct. 2080 ("[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding."). In the unique inquisitorial, rather than adversarial, context of the SSA, it makes little sense to judicially impose such a requirement. See id. at 110, 120 S.Ct. 2080 ("The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings."); 20 C.F.R. § 404.900(b). This is especially significant in SSA proceedings which often involve pro se litigants unskilled in the law and the nuances of concepts like waiver, forfeiture, and the Appointments Clause. See Sims, 530 U.S. at 112, 120 S.Ct. 2080.
Notably, even Lucia did not raise his claim at the ALJ level. See Lucia, 138 S.Ct. at 2050. Lucia first raised his claim on appeal to the SEC, see id., the equivalent *477 of the Appeals Council level in SSA disability litigation. However, in the SSA, "[c]laimants ... need not ... exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Sims, 530 U.S. at 112, 120 S.Ct. 2080.
The Commissioner contends that Ginsburg v. Richardson, 436 F.2d 1146 (3d Cir. 1971), mandates that issues be raised first with an ALJ to avoid forfeiture. Def. Resp. at 4. I disagree. Ginsburg concerned the basic application of the Social Security Act and regulations, not a structural constitutional challenge to the SSA adjudicatory system at large.[9] See 436 F.2d at 1151-52 (alleging prejudice of the hearing examiner and failure to transcribe all testimony of an expert witness); see also Freytag, 501 U.S. at 878-79, 111 S.Ct. 2631 ("Appointments Clause objections to judicial officers [are] in the category of nonjurisdictional structural constitutional objections that [can] be considered on appeal whether or not they were ruled upon below" (citation omitted)). Ginsburg is not controlling.
The Commissioner's reliance on United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), is equally unpersuasive. Def. Resp. at 2. L.A. Tucker involved Interstate Commerce Commission proceedings, which are adversarial in nature and bear little similarity to the unique nature of SSA proceedings. Compare L.A. Tucker, 344 U.S. at 36, 73 S.Ct. 67 ("[The ICC] examiner had [no] function except to decide justly between contestants in an adversary proceeding.") with Richardson, 402 U.S. at 410, 91 S.Ct. 1420 ("[The SSA ALJ] acts as an examiner charged with developing the facts."). Further, the claim in L.A. Tucker was that the hearing examiner was not appointed pursuant to the Administrative Procedure Act; it did not involve a constitutional claim. 344 U.S. at 35, 73 S.Ct. 67.
Finally, it makes little sense to require a claimant to raise an issue before an ALJ who is powerless to resolve it.[10] In an Emergency Message providing guidance to ALJs on Appointments Clause challenges, the SSA acknowledged that ALJs were powerless to decide constitutional issues. See Soc. Sec. Admin., EM-180003 REV, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process.[11] The Commissioner directed ALJs to respond to a claimant's Appointments *478 Clause challenge only by "acknowledg[ing] that the issue was raised," and noting in the hearing decision that "[the ALJ does] not have the authority to rule on [the] challenge." Id. This directive acknowledges the futility of raising a Lucia claim at the ALJ level.
This case should be remanded based on the improper appointment of ALJ Merritt. Like Lucia, remand must be to a different ALJ. Although the Commissioner has since ratified the appointment of all SSA ALJs, see EM-180003 REV 2, ALJ Merritt has "already both heard [Muhammad's] case and issued an initial decision on the merits. [She] cannot be expected to consider the matter as though [she] had not adjudicated it before," Lucia, 138 S.Ct. at 2055.
III. Remaining Claims
Because I recommend that this case be remanded based on the unconstitutional manner in which the ALJ was appointed, I do not address Muhammad's additional claims. See Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because ALJ may reverse his findings after remand).
Accordingly, I make the following:
RECOMMENDATION
AND NOW, on November 2, 2018, it is respectfully recommended that Muhammad's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this Report and Recommendation. On remand, the Commissioner is directed to provide the Appeals Council and the ALJ with a copy of this Order and Report and Recommendation. The Commissioner may file objections to this Report and Recommendation within fourteen days after being served with a copy thereof. See Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

Muhammad's record, consisting of over 1400 numbered pages, was uploaded to ECF. See (ECF Nos. 4-1-4-11). The Court cites to the record page numbers rather than ECF document numbers.

The Court reviews de novo the specific portions of the R & R to which a party objects. See 28 U.S.C. § 636(b)(1) ; see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc. , 150 F.3d 245, 250 (3d Cir. 1998). Here, the Commissioner objects to the R & R in its entirety. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

On July 21, 2014, Muhammad hired attorney Maria E. Harris to represent him in the Social Security proceedings, though his legal counsel has changed several times. See (R. 37, 35, 109-10, 122-23, 160-62).

Although some courts use "waiver" and "forfeiture" interchangeably, forfeiture is the appropriate term here where the Commissioner is arguing that Muhammad did not timely assert his Appointments Clause challenge. See United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst , 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' ").

The regulation reads in part:
An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity.
20 C.F.R. § 404.940. Some district courts believe that this regulation does not require a claimant to raise constitutional concerns with the ALJ's appointment because it provides only three limited circumstances for seeking disqualification of an ALJ. See Bradshaw v. Berryhill , No. 5:18-CV-00100, 372 F.Supp.349, 356-57, 2019 WL 1510953, at *6 (E.D.N.C. Mar. 26, 2019) ; see also Culclasure , 375 F.Supp.3d at 569-70, 2019 WL 1641192, at *8. Such an interpretation is not unreasonable, but the regulation's second sentence could also be read to give the claimant an opportunity to raise any objections he or she may have about the ALJ. In any event, it is unreasonable to conclude that a claimant who believes the ALJ has no legal authority to even hold the position will think that he or she cannot say raise such an issue because it may not technically concern alleged impartiality.

Justice Scalia, concurring in part and concurring in the judgment, observed that the majority did not accept petitioners' argument that Appointments Clause challenges cannot be forfeited. Freytag , 501 U.S. at 893, 111 S.Ct. 2631. He also acknowledged that appellate courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims but disagreed that the challenge in Freytag was a "rare case" excused from exhaustion. Id. at 892-94, 111 S.Ct. 2631. In his view, "Appointments Clause claims... have no special entitlement to review [and a] party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial." Id. at 893-94, 111 S.Ct. 2631. Justice Scalia reasoned that "since all forfeitures of Appointments Clause rights, and arguably even all forfeitures of structural constitutional rights, can be considered 'rare,' this is hardly useful guidance." Id. at 893, 111 S.Ct. 2631.

The R & R adds that an Appointments Clause challenge is particularly unforeseeable in this context "because many SSA claimants are unrepresented by counsel and lack any understanding of how SSA ALJs are appointed, or why it makes any difference." (R & R at 8.) Again, Muhammad was represented by counsel at all stages of the SSA proceedings, including during the ALJ hearing. See (R. 37, 46, 158).

The Emergency Message was revised again on August 6, 2018, removing this language and instead instructing ALJs presented with Appointments Clause challenges before July 16, 2018-the date on which the Acting Commissioner ratified the appointment of ALJs by approving the appointments as her own to cure any constitutional error-to acknowledge the challenge in the record and enter them into the agency's case processing systems for any necessary action. Soc. Sec. Admin., EM-18003 REV 2, effective Aug. 6, 2018.

The R & R also asserts that raising the issue would have been futile "because every SSA ALJ at the time of his hearing was improperly appointed," and Muhammad's case thus "could not have been reassigned even if the issue was raised and the ALJ had authority to address it." (R & R at 11 n. 10.) Again, however, the Commissioner could have reappointed all the ALJs herself well before July of 2018. Even if she didn't, this analysis ignores the fact that raising the challenge to the ALJ could have at least made it possible for the SSA to understand and correct the infirmity of the ALJ's appointment, or at a minimum, repetition of the objection may have led to a change of policy or put the SSA "on notice of the accumulating risk of wholesale reversals being incurred by its persistence." L.A. Tucker Truck Lines , 344 U.S. at 37, 73 S.Ct. 67.

Although courts should, as a general matter, avoid constitutional questions in advance of the necessity of deciding them, Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988), the Commissioner concedes the Lucia question is a "threshold matter" that must be reached in this case. See N.T. 10/16/18 at 46 (attorney for Commissioner stating the Lucia claim "impacts whether or not the Court views the ALJ's decision as a valid decision that can be reviewed").

Because the Supreme Court decided Lucia on the same day Muhammad filed his initial brief, he raised his Lucia claim in his reply brief. The Commissioner does not assert that Muhammad waived the claim by raising it in his reply.

Muhammad concedes the process for seeking benefits will be lengthened by the remand to a new ALJ. He elects to proceed nonetheless. See N.T. 10/16/18 at 47.

The Court found SEC ALJs are inferior officers because they (1) "take testimony," (2) "conduct trials," (3) "rule on the admissibility of evidence," and (4) "have the power to enforce compliance with discovery orders." Lucia, 138 S.Ct. at 2053 (citing Freytag v. Comm'r, 501 U.S. 868, 881-82, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ).

The SEC similarly ratified the ALJ who presided over Lucia's initial SEC hearing before the Supreme Court issued its decision. See Reply Br. for Resp. Supporting Pets., 2018 WL 1806836, at *18 (noting SEC ratification of its ALJs on November 30, 2017).

The DOJ represents the Commissioner in this case and represented the SEC in Lucia.

The memorandum goes on to note that "the Department of Justice no longer plans to argue that [ALJs appointed under 5 U.S.C. § 3105 ] are employees rather than inferior officers. Agencies should appoint all ALJs as inferior officers." Sol. Gen. Memo. 3.

Many of those decisions use the terms "waiver" and "forfeiture" interchangeably. The term "waiver" requires an affirmative relinquishment of a right, whereas "forfeiture" involves a failure to timely assert a right. See United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted). The Commissioner argues Muhammed forfeited his right to bring a Lucia claim by failing to raise it at the administrative level.

In Ginsburg, the Third Circuit held that the petitioner waived the right to object to the allegedly prejudicial conduct of the hearing examiner by failing to raise it before the Appeals Council, and likewise waived the right to object to the hearing examiner's failure to record portions of expert witness testimony by failing to raise it at all at the administrative level. 436 F.2d at 1152. The Supreme Court abrogated Ginsburg's holding that objections are forfeited if not raised before the Appeals Council. See Sims, 530 U.S. at 112, 120 S.Ct. 2080. The Court did not decide whether an issue had to be raised before an ALJ to be properly preserved. See id. at 107, 120 S.Ct. 2080 ("Whether a claimant must exhaust issues before the ALJ is not before us.").

Muhammad also notes that because every SSA ALJ at the time of his hearing was improperly appointed, his case could not have been reassigned even if the issue was raised and the ALJ had authority to address it. N.T. 10/16/18 at 17-18; see also id. at 15 ("It is unrealistic to expect that the [Commissioner] would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context.") (citing Mathews v. Eldridge, 424 U.S. 319, 329, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ).

This Emergency Message has been updated by Soc. Sec. Admin, EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process-UPDATE (2/6/2018).